**Gordon F. B. ONDIS, Plaintiff, Appellant,**

v.

**Fred H. BARROWS, Jr., et al., Defendants, Appellees.**

**No. 75–1443.**

United States Court of Appeals, First Circuit.

Argued March 3, 1976.
Decided June 25, 1976.

---

J. Joseph Nugent, Jr., Providence, R. I., and William M. Prifti, Boston, Mass., with whom Nugent & Nugent, Providence, R. I., was on brief, for plaintiff-appellant.

Richard J. Israel, Providence, R. I., with whom Levy, Goodman, Semonoff & Gorin, Providence, R. I., was on brief, for defendants-appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff-appellant Gordon Ondis, a stockbroker, originally brought this suit in December, 1973, in the Providence County Superior Court, against his former employer, the brokerage firm of G. H. Walker, Laird, Inc., three of the firm's officers or employees, and a customer, appellee Barrows. The complaint stated claims in tort and contract under state law, charging that Barrows had ordered through plaintiff 5,000 shares of the first public offering of the common stock of the Adams Drug Co., Inc., in December, 1972; that Barrows cancelled his order by oral instruction to plaintiff; that after the offering Barrows wrongfully denied cancelling his order and asked that it be honored at the issuing price; that the firm agreed to do so, purchased 5,000 shares at the market price and attempted to charge plaintiff for the difference, thereby wrongfully precipitating his involuntary resignation.

The corporate defendant removed the case and sought arbitration. It was agreed that diversity existed only as to this defendant. The district court found that separate and independent claims were asserted against the company in the nature of withheld compensation and breach of contract. The court sustained the removal of the entire case. 28 U.S.C. § 1441(c). It also ordered arbitration as to all parties except defendant Barrows. Neither of these orders has been questioned on appeal.

Following the arbitration, the complaint was voluntarily dismissed as against the firm and the officers or employees, leaving only a state law tort action against a non-diverse defendant, Barrows. Plaintiff, however, amended his complaint to add as a defendant the State Street Bank & Trust Co., and to state a federal claim based upon an alleged violation of Federal Reserve Board Regulations U and X, which relate to bank credit for the purpose of purchasing or carrying margin stock.[1] It appeared that the bank loaned Barrows the money for the purpose of buying the Adams Drug stock. Nevertheless, the district court granted summary judgment to the defendants on this count, a ruling which is claimed to be error.

The district court relied on three grounds: (a) that the Adams stock was not margin stock as defined by the Regulations; (b) that no security interest was taken by the bank, so that even if margin stock were involved, the Regulations could not have been violated; and (c) that plaintiff had no standing to sue, not being within the class of persons intended to be protected. To these grounds, appellee's brief adds a substantial argument that as a matter of law

1. Regulation X is relevant to plaintiff's claim only in subjecting a borrower to the same prohibitions as are imposed upon a bank by Regulation U. See 12 C.F.R. § 224.2(a)(3).

any violation of the Regulations was so remote as not to be a proximate cause of plaintiff's injuries. We find the first ground dispositive, and therefore express no opinion on the others.

■ "For credit extended by a bank to be subject to Regulation U [and therefore Regulation X as well] two conditions must be met. First, the credit must be 'purpose credit,' i. e. credit extended for the purpose of purchasing or carrying margin stock. 12 C.F.R. § 221.1(a)." *Daley v. Capitol Bank & Trust Co.*, 506 F.2d 1375, 1376 (1st Cir. 1974). The Regulation defines margin stock as follows in 12 C.F.R. § 221.3(v):

"(v) The term 'margin stock' means any stock which is (1) a stock registered on a national securities exchange, (2) an OTC [over the counter] margin stock, (3) a debt security (i) convertible with or without consideration, presently or in the future, into a margin stock or (ii) carrying any warrant or right to subscribe to or purchase, presently or in the future, a margin stock, (4) any such warrant or right, (5) any security issued by an investment company other than a small business investment company licensed under the Small Business Investment Company Act of 1958 (15 U.S.C. 661) registered

pursuant to § 8 of the Investment Company Act of 1940 (15 U.S.C. 80a–8), unless 85 per cent of the assets of such company are continuously invested in exempted securities."

Defendants submitted an affidavit to the effect that at the time in question Adams was not registered on any national securities exchange; that the stock was not listed on the Federal Reserve Board's list of OTC margin stocks; that the stock was not a debt security of any kind; and that it was not a warrant or right to purchase stock of any kind. This presented a prima face case that the stock was not margin stock under the terms of the regulations [2] (and hence that there could have been no violation), and shifted the burden to plaintiff to set forth specific facts showing the existence of a genuine issue for trial on this score. Any information necessary to question the affidavit's substantive assertions would appear to be in the public domain and easily accessible to plaintiff; at least, we are not informed to the contrary. Plaintiff, however, fails to dispute any of the material facts averred in the affidavit; [3] and since a determination that the Adams stock was not margin stock at the time in question [4] was dispositive of the federal claim, the ruling

---

**2.** Of the five categories defined in § 221.3(v) as margin stock, the affidavit denied the applicability of the first four. There is no suggestion in the record that Adams Drug was an investment company registered under the Investment Company Act of 1940. While this unlikely possibility technically should have been controverted, the parties appear to have considered the investment company category as so obviously inapplicable as not to deserve mention. No error is alleged on this ground.

**3.** Appellant's brief on appeal specifically states that the stock in question "was not designated as margin stock nor placed on the Federal Reserve Board's OTC margin stock list", and can be read as admitting the other allegations as well.

Appellant does criticize the affidavit: "The affiant Kirkpatrick's statements, intended to show that unregistered or unlisted or non-margin stock was not covered by Regulation U, are largely beyond his personal knowledge. . ." We do not take seriously the suggestion that Regulation U covers non-margin stock despite its clear language to the contrary. 12 C.F.R.

§ 221.1(a). To the extent that appellant charges that the statements that the stock was unregistered and unlisted must have been beyond the affiant's personal knowledge, this objection was properly rejected below in light of the affiant's averment that he was the office manager of the Providence office of G. H. Walker when the firm was the principal underwriter for the Adams offering, and that he became "personally familiar with events surrounding the public offering of Adams, as well as with the securities themselves." While a more detailed affidavit would have been desirable, we think it credible that someone in such a position would have personal knowledge relative to OTC listing and stock exchange membership, and there was no attempt to substantiate plaintiff's conclusory denial.

**4.** Appellant's argument that Adams' subsequent registration on the New York Stock Exchange nine months after the events at issue somehow turned the initial lending into a retroactive violation is completely answered by 12 C.F.R. § 222.108.

was proper. F.R.C.P. Rule 56(e); *see Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975).[5]

■ After dismissing the federal claim, the district court found the state law issue not to be closely tied to questions of federal policy; nor were there, in its view, any considerations of judicial economy or fairness to the litigants to support the exercise of federal jurisdiction, citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). These were appropriate considerations in the decision whether to retain jurisdiction, *see Brough v. United Steelworkers*, 437 F.2d 748 (1st Cir. 1971), but the disposition ultimately made by the district court—dismissal without prejudice to filing anew in state court— gave insufficient weight to the original jurisdictional foundation of the claim. The suit had been removed to federal court on the basis of a separate and independent cause of action against a diverse defendant under 28 U.S.C. § 1441(c). That statute provides, relative to the presence of otherwise non-removable claims, that "the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction." The district court originally kept the entire case; subsequently the separate removable diversity claim was eliminated.

■ What remained then was a cause of action retained as an act of discretion under § 1441(c), and the options for the district court were to proceed to the merits or, in its discretion, remand.[6] The temporary interjection of a federal question claim, and its disposition by summary judgment some seven months later, did not, in our view, supercede the jurisdictional basis of the state law count entirely. A decision to retain jurisdiction could have been supported either as pendent to the removed diversity claim or pendent to the federal

question cause added after removal. An exercise of discretion to relinquish jurisdiction, however, could, we think, take the form of no action more drastic than a remand to the state court from which the action came. In dismissing, the district court may have viewed the first amended complaint in isolation; but the state law count had not lost its heritage. Under these circumstances, at least, we see no purpose in requiring plaintiff to file anew in state court; fairness would appear to dictate at most a remand.

■ With this one caveat, the exercise of the court's discretion not to retain jurisdiction cannot be said to have constituted abuse. Appellant's objection relating to the effect of various statutes of limitation is obviated by our direction to remand rather than dismiss. Standards of jurisdiction over the bank on the state law claim will not differ as between the state court and a federal diversity court. We do not know whether the Rhode Island court will place the case at the bottom of the calendar or will favor it because it originated in that court some time ago. We do note that delay since February, 1975, is attributable to plaintiff's addition of a federal claim, which was an improbable one to say the least, and his appeal from the adverse ruling thereon. In any event, the pre-trial discovery taken in federal court would appear to be available for use in the state proceeding. Finally, there has been no substantial commitment of federal judicial resources to the nonfederal claim as would indicate the advisability of retaining it. *Murphy v. Kodz*, 351 F.2d 163 (9th Cir. 1965). At bottom, this case manifestly belongs in state court.

Twelve days following the judgment dismissing the entire case, the plaintiff offered a second amended complaint alleging that

---

5.  We see no reason why the bank should not be allowed to adopt the affidavit and memorandum originally submitted on this issue by the other defendant, when it joined in the motion for summary judgment and presented an identical posture.

6.  We reject the argument that somehow the earlier discretionary retention became law of the case despite the drastic change in the posture of the case in the interim. *See Brough, supra.* The cases cited by appellant, *e. g., Murphy v. Kodz*, 351 F.2d 163 (9th Cir. 1965), do not support this proposition.

the "actions of the defendant Barrows in misrepresenting that he had not cancelled his stock purchase operated as a fraud or deceit upon the plaintiff" in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5. The court did not allow the filing of this complaint, a ruling which is appealed.

■ The ruling on a motion to amend under Rule 15(a), F.R.C.P., is normally within the discretion of the trial court, *Farkas v. Texas Instruments, Inc.*, 429 F.2d 849 (1st Cir. 1970); but amendments under the rule are liberally granted, 3 Moore, Federal Practice, ¶ 15.08, and some justification is required for a refusal. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). It is argued, however, that the posture of the present case requires this receptive approach to be coordinated with the more discouraging values attaching to the integrity of final judgments. The federal rules should be read in harmony with one another, *e. g., In re Arvedon*, 523 F.2d 914 (1st Cir. 1975). "Most courts faced with the problem have held that once a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or 60." 6 Wright & Miller, Federal Practice & Procedure, § 1489, at 495. "The better view is that after a judgment of dismissal a plaintiff must move under Rule 59(e) or Rule 60(b) to reopen the judgment." 3 Moore, Federal Practice, ¶ 15.10, at 959. The grant of summary judgment is as efficacious for these purposes as is a jury verdict. *Freeman v. Continental Gin Co.*, 381 F.2d 459 (5th Cir. 1967); *Cooper v. R. J. Reynolds Tobacco Co.*, 256 F.2d 464 (1st Cir. 1958).

■ The interplay of these competing policies requires some flexibility. *Foman v. Davis, supra*, which disapproves of blindly restricting leave to amend after dismissals simply on the pleadings, is at one extreme. We take *Foman* to establish not that Rule 59 or 60 has no place in our consideration of such cases, *see Keene Lumber Co. v. Leventhal*, 165 F.2d 815 (1st Cir. 1948); *United States v. Newbury Mfg. Co.*, 123 F.2d 453 (1st Cir. 1941), but rather that the showing required (e. g., excusable neglect), need not be as formidable as it would be following a ruling on the merits—although it would dwindle to nothing on a timely motion following a dismissal based on a technical defect in the pleadings. The instant case falls nearer the policies implicated in Rule 60(b). Not only was the claim of dominant interest to the federal court dismissed on the merits, but the history of the case—both as to timing and events—contributed to plaintiff's burden. The operative facts had occurred in December, 1972; the complaint was filed and removed in December, 1973; the first amended complaint, adding the federal claim under Regulation U, was filed in February, 1975; following discovery, summary judgment on the federal count and dismissal of the state count took place in August, 1975. There was ample opportunity to have asserted the 10(b)–5 claim during that period, and plaintiff has offered no excuse for not doing so. This failure in itself constituted undue delay under *Foman*.[7]

*The grant of summary judgment and refusal of leave to amend are affirmed; the case is remanded with directions to vacate the dismissal of Count I and remand that count to the state court.*

---

7. The district court rested its denial on a finding that the proposed count would be futile in light of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), which held that only purchasers and sellers, not offerees, could maintain damage actions under Rule 10(b)–5. Appellant argues that this holding should be read narrowly because the reasons for restricting offerees do not apply to his situation where the asserted injury was "in connection with a purchase or sale" and was not intangible. The court below also asserted that the fraud alleged here was not of the variety against which Rule 10(b)–5 was intended to protect; *but see A. T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967). We do not reach these questions.