383 So.2d 409 (1980)
Warren REDLER
v.
LOUISIANA POWER & LIGHT COMPANY, INC., and General Electric Co., Inc.
No. 10269.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1980.
Rehearing Denied May 22, 1980.
*410 Jesse S. Guillot, New Orleans, for plaintiff-appellant.
Porteous, Toledano, Hainkel & Johnson, William A. Porteous, III, New Orleans, for defendants-appellees.
Before GULOTTA, GARRISON and HOOD,[*] JJ.
GULOTTA, Judge.
Plaintiff, a Gulf Engineering Company employee, appeals from the dismissal of his damage suit against Louisiana Power and Light Company, Inc. and General Electric Company, Inc.
Issues raised by plaintiff in this appeal are (1) whether plaintiff's remedy for injuries sustained is exclusively in workmen's compensation (thereby exonerating the defendants, as statutory employers, from tort liability)[1]; and (2) alternatively, whether *411 General Electric Company, Inc. is responsible to plaintiff for his job-related injuries sustained as a result of General Electric's breach of its contract with Louisiana Power and Light to provide workmen on the job site with a safe place to work. Because we conclude the record clearly establishes that these defendants are statutory employers, we affirm the trial court's judgment.
On May 26, 1974 plaintiff, a millwright foreman[2] employed by Gulf Engineering Company, sustained an on-the-job injury while doing maintenance overhaul work on a Louisiana Power and Light turbine. The accident occurred at a Louisiana Power and Light electricity production plant in Sterlington, Louisiana. L.P. & L. had contracted with General Electric Company to do preventive and corrective maintenance overhaul of the turbine, with some modifications being made. General Electric, in turn, had subcontracted with Gulf Engineering Company to make revisions on the outer shell of the turbine. Plaintiff's ear injury was caused by a blast concussion from an explosion which occurred while he was drilling holes in the turbine. According to plaintiff, General Electric employees, engaging in "horseplay", ignited an explosive device in the vicinity where plaintiff and another Gulf Engineering Company employee were working.
To determine the ultimate question whether the defendants in this case are statutory employers, it is necessary that we ascertain whether plaintiff, at the time of the injury, was engaged in the "trade, business or occupation" of these defendants. See Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978). This determination depends upon the facts and circumstances of each case. Sisk v. Insurance Company of North America, 356 So.2d 1109 (La.App. 2nd Cir. 1978); Foster v. Western Electric Co., 258 So.2d 153 (La.App. 2nd Cir. 1972). Our courts also have recognized that maintenance and repair work comes within the scope of one's trade, business or occupation. Barnes v. Sun Oil Co., supra; Gray v. Louisiana Power and Light Company, 247 So.2d 137 (La.App. 4th Cir. 1971), writ refused, 259 La. 59, 249 So.2d 202; Duplechin v. Pittsburg Plate Glass Company, 265 So.2d 787 (La.App. 3rd Cir. 1972); Sisk v. Insurance Company of North America, supra.
Karl C. P. Muller, L.P. & L.'s employee in charge of the power production department, testified L.P. & L. was in the business of the production of electricity, and that from time to time emergency repairs and maintenance work was required. Fred McBeth, also an employee of L.P. & L., stated that at the time of the injury a general overhaul and maintenance of the turbine was being carried out. Jim Crumbley, a field engineer for General Electric Company, who was working for G.E. in connection with the L.P. & L. contract at the Sterlington plant, stated that plaintiff was working on a maintenance job overhauling the turbine.
Warren Redler did not testify that the work in which he was engaged was maintenance work. However, he specifically mentioned that no one supervised his work; that he was in charge of the Gulf Engineering Company employees; that blueprints of the turbine were supplied by General Electric Company; that if he had any problems *412 with the blueprints, he would seek help from his own employer rather than from General Electric or L.P. & L. employees; and that neither General Electric nor L.P. & L. people supervised or instructed the Gulf Engineering Company employees. The obvious purpose of this testimony was to support his contention that he was not subject to the control and supervision of either L.P. & L. or G.E.
On the other hand, Redler also testified that when he was injured he reported the injury to Jim Crumbley and was told by Crumbley to return to work. He stated that he tried but was unable to continue with his work. Plaintiff testified also he was referred by an L.P. & L. employee to a doctor in Monroe, Louisiana.
Crumbley testified further that he and an L.P. & L. representative checked periodically to see if the work was being done properly, and also periodically checked the timesheets of the Gulf Engineering Company employees.
Applying the well-established jurisprudence to the facts of our case, we conclude the maintenance overhauling of the L.P. & L. turbine, in which plaintiff was engaged at the time of the injury, was maintenance and repair work and, as such, was part of both L.P. & L.'s and G.E.'s trade, business or occupation. We reach this conclusion irrespective of Redler's testimony that his day-to-day work was not subject to the control of L.P. & L. and G.E.
Having so concluded, we hold that Louisiana Power and Light and General Electric were statutory employers of Redler and as such exonerated from tort liability. Plaintiff's remedy against these statutory employers is in workmen's compensation.
Alternatively, however, plaintiff argues the contract between L.P. & L. and G.E. was a contract for the benefit of a third party because it contained provisions that G.E. shall remove from the work any "undesirable" persons, and that the "use of explosives in a manner which might disturb or endanger the stability, the safety or quality of the work will not be allowed." Plaintiff claims G.E. breached this contract when its employees set off the explosive device. Accordingly, Redler contends, he is entitled as a third party beneficiary to recover damages for "default of contract."[3] We find no merit to this contention.
Because we have concluded that plaintiff's remedy is exclusively in workmen's compensation, it necessarily follows that neither L.P. & L. nor G.E. are responsible for damages for injuries received by a statutory employee, regardless whether the employee claims the injury resulted from a tort or a breach of contract. If we were to conclude otherwise, a plaintiff might assert a claim against any employer, statutory or otherwise (predicated on the employer's implied agreement to provide a safe place to work), and thereby claim recovery, based not upon tort but on breach of contract. This illogical result would in effect write out of our statutory law LSA-R.S. 23:1061 and 23:1032.
Accordingly, we hold plaintiff's exclusive remedy for damages resulting from the accident is under the Workmen's Compensation Act. The judgment is affirmed.
AFFIRMED.
NOTES
[*] Due to the death of Judge John T. Hood prior to rendition, but after his concurrence therein, this opinion is rendered unanimously by Gulotta and Garrison, JJ.
[1] R.S.23:1032 and R.S.23:1061 read as follows, in pertinent part:

"§ 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws.
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof...."
"§ 1061. Principal contractors; liability
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed...."
[2] Plaintiff gave the following description of his job:

"A millwright foreman is the man who goes out on the job, takes the job over and directs the people under him, repairing or making revisions of machinery, or installation of machinery."
[3] LSA-C.C. Arts. 1889 and 1890 read as follows:

"Art. 1889. No one can, by a contract in his own name, bind any one but himself or his representatives; but he may contract, in his own name, that another shall ratify or perform the stipulation which he makes,* and in this case he shall be liable in damages, if the contract be not ratified or performed by the person for whose act he stipulates."
* Note error in English translation of French text; "he makes" should be "is the object of the contract."
"Art. 1890. A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."