Doris Marie DARVILLE, etc., et al.,
Plaintiffs-Appellants,

and

Maryland Casualty Company,
Intervenor-Appellant,

v.

TEXACO, INC., et al.,
Defendants-Appellees.

No. 81–3656
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 29, 1982.

Rehearings Denied May 26, 1982.

Paul J. Galuszka, New Orleans, La., for Darville et al.

Kennon, White & Odom, John S. White, Jr., Baton Rouge, La., for Maryland Cas. Co.

Chaffe, McCall, Phillips, Burke, Toler & Sarpy, Charles L. Chassaignac, Wiley G. Lastrapes, Jr., New Orleans, La., for defendants-appellees.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

The resolution of this appeal requires consideration of the "statutory employer" designation under Louisiana's workers' compensation regime. In *Ortego v. Union Oil Co. of California*, 667 F.2d 1241, 1242

(5th Cir. 1982), and *Blanchard v. Engine & Gas Compressor Services, Inc.*, 613 F.2d 65, 71 (5th Cir. 1980), we stated that the proper test for answering this query is "whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business." Relying on this standard and on the language of La.R.S. 23:1061,[1] we affirm the trial court's summary judgment in favor of the ostensible statutory employer.

On December 3, 1979, Austin Darville was the tragic victim of an explosion which occurred while he was vacuuming the American Petroleum Institute (API) Separator at Texaco, Inc.'s refinery at Convent, Louisiana. Darville was employed as a vacuum truck operator by Louisiana Vacuum Services, Inc. His employer was under contract with Texaco to furnish, maintain, and operate vacuum trucks, on a call-out basis, to remove acid, caustic oil, water, sludge, liquid hydrocarbons, and their mixtures accumulating in the API Separator. Doris Marie Darville, individually, on behalf of her four minor children, and on behalf of the decedent, filed this diversity action against Texaco and one of its executive officers, C. A. Reisdorf. The action is based on negligence, strict liability, and intentional tort theories.

Claiming statutory employer status, Texaco moved for summary judgment; Reisdorf also motioned for summary resolution, asserting that the plaintiff failed to raise a triable issue of fact on the intentional act theory. The plaintiff filed a cross motion for summary judgment. After hearing all motions, the district court denied the plaintiff's motion and granted the defendants' motions.

### Use of Summary Judgment

The plaintiff maintains that the trial court erred in granting summary judgment because a genuine dispute of material fact exists whether Texaco's trade, business, or occupation includes vacuuming and removing waste sludge from its API Separator. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is available if the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed disclose no genuine issue of material fact. *See, e.g., Volyrakis v. M/V ISABELLE*, 668 F.2d 863 (5th Cir. 1982); *Murphy v. Georgia-Pacific Corp.*, 628 F.2d 862 (5th Cir. 1980). We recently noted that "[t]ypically, whether the work performed by the injured worker's employer is part of the trade or business of the ostensible statutory employer is an issue of fact, determined according to the circumstances of each case." *Ortego v. Union Oil Co. of California*, 667 F.2d at 1242 (*citing Barnes v. Sun Oil Co.*, 362 So.2d 761 (La.1978); *Lushute v. Diesi*, 354 So.2d 179 (La.1978)). *See Thompson v. South Central Bell Co.*, 411 So.2d 26 (La.1982). But "summary resolution of this issue is not prohibited." *Ortego v. Union Oil Co. of California*, 667 F.2d at 1242.

The record before us contains the affidavit of J. J. Lennox, Texaco Plant Manager at Convent, which attests that all petroleum refineries use oily water collection systems.

---

1. La.R.S. 23:1061 prescribes:

    Where any person (in this section referred to as principal) undertakes to execute any work, which is part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

    The significance of the categorization as a "principal" or "statutory employer" under R.S. 23:1061 is found in R.S. 23:1032, which prescribes that the compensation remedy is "exclusive of all other rights and remedies" of the employee.

Removing hydrocarbons from the water via an API Separator or some other process is necessary; otherwise, refineries could not operate. Lennox states that the "twelve (12) Texaco refineries in the United States all have API Separators. These API Separators must periodically be cleaned in order to prevent an over-accumulation of oil sludge that would break or jam the skimmers rendering the API Separators inoperable." Louisiana Vacuum service was employed by Texaco to perform this cleaning. Lennox further attested that

> In addition to the Texaco Louisiana plant, Texaco has eleven other refineries in the United States. At ten of those eleven refineries Texaco owns one or more vacuum trucks. At nine of those refineries vacuum trucks are used to clean the API separator. In eight of the nine refineries where vacuum trucks are used to clean the API separators, Texaco personnel are utilized in the cleaning operation.

The plaintiff offered the affidavits of Perry "Jeff" Smith, Jr., the comptroller of Louisiana Vacuum Service, and Stanley LeRoy Day, a safety professional with 26 years of experience with oil refineries in the United States. Smith stated that, to the best of his "knowledge, information and belief, in December 1979, oil refineries in Louisiana generally contracted with vacuum service companies to obtain vacuum truck service for such units as API separators, rather than owning and operating such trucks themselves." And Day testified that "the function of vacuuming waste sludge from the American Petroleum Institute Separator . . . or an equivalent 'oily water' separator, is not part of the manufacturing process of converting crude oil into petroleum products." The combination of these two affidavits, it is argued, raises two triable issues of fact concerning Texaco's statutory employer status: (1) whether the removal of sludge from the API Separator is part of Texaco's business;[2] and (2) whether Texaco's failure to perform this task with its own employees prevents the labor from constituting part of its regular business. We do not agree.

Our review of the record answers the query whether the existence of a genuine factual dispute made summary disposition inappropriate.[3] We conclude that there is no factual dispute; the real quarrel is over the application of controlling legal provisions to the established facts. Texaco concedes that it is not in the business of producing hydrocarbon and chemical sludge. But this does not mean, as the plaintiff suggests, that the cleaning of the API Separator at Texaco's Convent refinery—which is necessary for the plant to remain on-line—is not an integral part of Texaco's trade or business. It is uncontroverted that Texaco's Convent refinery could not remain operational without the vacuuming of the API Separator.

■ In this regard, the plaintiff correctly argues that our *Blanchard* decision rejected as not controlling the "essential to business" test for identifying work resulting in the statutory employer categorization. We also said, however, that in making this determination, "it is proper to consider all facts which would or would not suggest a statutory employment relationship." 613 F.2d at 71. And, while not dispositive, whether "the work is essential to the business of the principal or others engaged in

---

**2.** At the hearing, plaintiff's counsel further explained this contention:

> Their [Texaco's] operation . . . is the production of and transformation from crude oil into a sellable product. This vacuuming operation is vacuuming of waste sludge. It's not marketable, it's not sellable, it has nothing to do with the manufacturing process which is what they do.

**3.** This distinguishes the instant matter from the recent *Thompson v. South Central Bell Telephone Co.* case in which the Supreme Court of Louisiana, reversing a summary judgment in favor of South Central Bell in a tort suit which had been granted on the basis of R.S. 23:1061, concluded "that there is a genuine issue as to a material fact and . . . there is a reasonable inference to be drawn from the evidence under which mover is not entitled to judgment as a matter of law." 411 So.2d at 28–29 (footnote omitted).

similar businesses, may be one such fact." *Id.* From our review of the record, we are convinced that the trial court correctly ruled; the finding that the vacuuming of sludge from the API Separator at the Convent plant is part of Texaco's "trade, business, or occupation" seems inescapable. *See, e.g., Guinn v. Progress Drilling, Inc.,* 398 So.2d 128, 130 (La.App.1981) ("It is settled that ordinary maintenance and repairs are part of an employer's regular business, trade and occupation.") (*citing Barnes v. Sun Oil Co.,* 362 So.2d 761 (La.1978); *Redler v. Louisiana Power & Light Co., Inc.,* 383 So.2d 409 (La.App.1980); *Duplechin v. Pittsburgh Plate Glass Co.,* 265 So.2d 787 (La.App.1972)). *See also Perry v. Texaco Co.,* 320 So.2d 310 (La.App.1975); *Allen v. United States Fire Ins. Co.,* 222 So.2d 887 (La.App.1969).

The second point of error raised with respect to the statutory employer decision by the district court stems from Smith's uncontroverted testimony that Texaco always contracted out the vacuuming work at Convent. Standing alone, this statement is not sufficient to raise a triable issue of fact, and "will not preclude the application of § 1061, provided all other evidence indicates the activity is an integral part of the principal's business." *Blanchard v. Engine & Gas Compressor Services, Inc.,* 613 F.2d at 71. *See Guinn v. Progress Drilling, Inc.,* 398 So.2d at 130 ("the determination of whether a principal is the statutory employer of a contractor's employee is not dependent upon the principal having employees performing the same task").

As a matter of fact and law, Texaco was Austin Darville's statutory employer at the time of his fatal accident. Accordingly, it is not subject to an ex delicto action for his wrongful death.

### Strict Liability and Intentional Acts

◼ In the alternative, the plaintiff argues that Texaco, shielded from a negligence action as a statutory employer, is liable under Louisiana Civil Code articles 2317 and 2322 and calls for an invocation of the "dual capacity" doctrine, which allows an injured employee to sue his employer if the employer breached a duty owed to the employee outside the employment relation. While the Supreme Court of Louisiana apparently has not addressed the issue, the state's intermediate appellate courts have rejected the doctrine. *See, e.g., Courtney v. BASF Wyandotte Corp.,* 385 So.2d 391 (La. App.), *cert. denied,* 386 So.2d 359 (La.1980); *Hebert v. Gulf States Utilities Co.,* 369 So.2d 1104 (La.App.1979); *Atchison v. Archer-Daniels-Midland Co.,* 360 So.2d 599 (La.App.), *cert. denied,* 362 So.2d 1389 (La. 1978). In view of these decisions, and mindful of R.S. 23:1032's exclusivity rule, we affirm the district court's correct use of the summary judgment vehicle.

The final issue raised is the plaintiff's complaint that the trial court erred in granting Reisdorf's motion for summary judgment because an intentional tort action, which is an exception to the worker's compensation suit bar, is available. The plaintiff maintains that since Reisdorf was Texaco's general manager for the Southern Region of the United States at the time of the accident, he had ultimate control over safety regulations and violations at the Convent refinery. Apparently, if certain safety measures had been instituted at the Convent refinery, the explosion which killed Darville might have been avoided. As a consequence, the plaintiff argues that Reisdorf—who had access to information that indicated gas tests were needed to maintain safe conditions around the API Separator but did not correct the situation—may be liable under the intentional tort exception to the Workers' Compensation Act. We cannot agree.

◼ The Supreme Court of Louisiana recently had the occasion to discuss in-depth the meaning of "intent," for the purposes of the intentional act exception established by an amendment to La.R.S. 23:1032. The court, in *Bazley v. Tortorich,* 397 So.2d 475, 481 (La.1981), wrote:

The meaning of "intent" is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening

from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be to that result. Thus, intent has reference to the consequences of an act rather than to the act itself.

(Citations omitted.) According to one Louisiana intermediate appellate court, which has confronted the intentional act issue in the R.S. 23:1032 context in three opinions since the supreme court's decision, *Bazley* "concluded that the words 'intentional act' meant the same as 'intentional tort' in reference to civil liability." *Cortez v. Hooker Chem. & Plastics Corp.*, 402 So.2d 249, 251 (La.App.1981). *See Mayer v. Blue Cross Ins. Co., Inc.*, 402 So.2d 273 (La.App.1981); *Bazley v. Silverman*, 402 So.2d 228 (La.App. 1981). Using these guides, the evidence does not support the inference that Reisdorf may be liable under an intentional tort standard. The district court was correct.

AFFIRMED.