Bernard WILLIAMS, Plaintiff-Appellant,

v.

SHELL OIL COMPANY and Insurance
Company of North America,
Defendants-Appellees.

No. 81–3512.

United States Court of Appeals,
Fifth Circuit.

June 4, 1982.

David Band, Jr., New Orleans, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John G. Gomila, Jr., New Orleans, La., for defendants-appellees.

Before WISDOM, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

The plaintiff, Bernard Williams, an employee injured while working at the defendant Shell's plant, brought suit against Shell for negligence. The district court granted Shell's motion for summary judgment on the ground that Williams was the statutory employee of Shell, with an exclusive remedy under the Louisiana workmen's compensation law. The plaintiff appeals.

Bernard Williams, an employee of Gulf Coast Cooling Tower Service, Inc., was working as a carpenter at the Shell Oil Company's Norco Manufacturing Complex pursuant to a contract between Gulf Coast and Shell Oil for the repair and maintenance of the plant's "cooling towers." Williams was injured in the course of his work when a pressurized line burst, spraying him with acid and causing chemical burns. Shell claims that the maintenance being done by the plaintiff is of a type ordinarily done by Shell's own employees, but on such a scale that Shell did not have sufficient employees to do the work itself. Shell argues that Williams's sole remedy against it is in workmen's compensation.

The central issue is whether Williams may sue Shell Oil in ordinary tort for the injuries he sustained. Williams may not sue his direct employer, Gulf Coast, because of the exclusive remedy under the workmen's compensation law. The district court found that the plaintiff was the "statutory employee" of Shell Oil at the time of the accident and granted Shell's motion for summary judgment, dismissing the plaintiff's suit. We find that there exists a genuine issue of fact as to whether the specific carpentry work Williams was doing on the cooling tower is an integral part of Shell's own trade, business, or occupation. Therefore, summary judgment was not proper in this case and we reverse.

*Overview*

The Louisiana Workmen's Compensation Law, LSA–R.S. 23:1061 [1] provides that when a principal has contracted to have performed work "which is part of his trade, business or occupation," he shall be liable for workmen's compensation benefits to the contractor's employees. A statutory employer subject to paying compensation benefits cannot be held liable in tort to an injured employee of the contractor since the compensation remedy is exclusive. LSA–R.S. 23:1032 (Supp.1981); *Thompson v. South Central Bell Co.*, 411 So.2d 26 (La. 1982); *Thibodaux v. Sun Oil Co.*, 218 La. 453, 49 So.2d 852 (1950). If, however, the work being performed by the injured employee does not fall within the defendant's "trade, business or occupation," the exclu-

1. LSA–R.S. 23:1061. Principal contractors; liability.

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and

where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

sivity of compensation will not be a defense to a tort action brought against the principal.

■ While much of the litigation concerning section 1061 has occurred in suits where the injured worker is claiming a tort remedy against a defendant who raises the exclusivity of compensation as a defense, that was not the primary purpose of the statute. The fundamental purpose behind the liability of a principal to the employees of a contractor is to prevent principals from contracting out their work in order to evade liability for workmen's compensation benefits to the employees who actually perform the principal's business by interposing an impecunious independent contractor or subcontractor between the principal and his employee. Malone and Johnson, Louisiana Civil Law Treatise: Workers' Compensation, §§ 121–127 (2d ed. 1980). To this end, the coverage has been liberally construed. However, "it is well to keep in mind the purpose of Section 1061. Ordinarily the principal should not be subjected to the compensation claims of his contractor's employees; it should rest with the contractor. It is only when the principal seeks to avoid his compensation obligation by farming out part of his own normal operations to a contractor that an evil arises which requires exceptional treatment. Section 1061 serves as a secondary protection for the injured worker, rather than as the primary remedy." Malone and Johnson, supra, § 126 at 262. Thus, when work is customarily done by specialized contractors, the purpose behind the rule is not violated and the reason for holding the principal directly liable in compensation exclusively does not come into play. Malone and Johnson, supra, § 78 at 144, § 126 at 262.

*Principal's "Trade, Business, or Occupation": The Test*

■ Whether the work performed by the injured employee is part of the trade or business of the principal is an issue of fact to be determined by the circumstances of each case. *See Blanchard v. Engine & Gas Compressor Services, Inc.*, 613 F.2d 65, 71 (5th Cir. 1980); *see, e.g., Thompson v. South Central Bell Co., supra*, 411 So.2d 26; *Duvalle v. Lake Kenilworth, Inc.*, 396 So.2d 1268 (La.1981); *Barnes v. Sun Oil Company*, 362 So.2d 761 (La.1978); *Lushute v. Diesi*, 354 So.2d 179, 183 (La.1978); *Boudreaux v. Boudreaux*, 369 So.2d 1117, 1119 (La.App. 1st Cir. 1979).

■ The standard to be applied is not a mechanical test. In considering the proper standard to apply under Louisiana law, this court in *Blanchard*, the controlling seminal precedent in this circuit, recently articulated the test for statutory employment:

> The proper standard, as we see it, is whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business.
>
> More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship, and the inquiry ends there. If, however, the principal does not normally engage in this type of activity, or if it is not normally a part of his practices, then it is necessary to determine if others engaged in businesses similar to that of the principal customarily do this type of work or if it is an integral part of their businesses. If either of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relationship between the principal in question and his contractors' employees that of statutory employer and employee.

613 F.2d at 71.[2]

*Summary Judgment*

The trial court granted Shell's motion for summary judgment. Shell argues that the

**2.** When section 1061 is being used as a defense to tort liability, the defendant has the burden of

motion was properly granted as the work being performed by Gulf Coast formed part of the regular trade, business, or occupation of Shell Oil at its Norco complex. In support of that position, Shell claims that its own employees had performed, and continue to perform, the same type of work, but that the job in question was on a larger scale so that Shell did not have a sufficient number of employees at the plant to complete the job.[3] Williams contests the summary disposition, arguing that there are disputed issues of material fact and disputed inferences that might be properly drawn from the disputed facts. Fed.R.Civ.P. 56(c). *Winters v. Highlands Ins. Co.*, 569 F.2d 297, 299 (5th Cir. 1978).

■ A grant of summary judgment is appropriate only where it appears from the pleadings, depositions, admissions, answers to interrogatories, and affidavits—considered in the light most favorable to the opposing party—that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Cubbage v. Averett*, 626 F.2d 1307, 1308 (5th Cir. 1980). The burden of proof falls on the moving party (Shell) and any doubt as to the existence of a genuine issue of material fact should be resolved against the movant.

*Murphy v. Georgia-Pac. Corp.*, 628 F.2d 862, 866 (5th Cir. 1980).

*Application of the Blanchard Test to the Present Case*

■ Examining the showing made by Shell to determine whether under the *Blanchard* test the work-injury activity of the plaintiff Williams or his direct employer (Gulf Coast) was part of Shell's trade, business, or occupation, we find that both the defendants' statement of uncontested facts[4] and the affidavit of its maintenance manager[5] state that, while Shell uses its own employees to perform small and medium scale maintenance, it *customarily contracts with outside concerns* to perform large scale repairs, such as the job in question. In short, by its own statements, the job being done by Gulf Coast was *not that customarily or regularly performed* by Shell itself through its own employees.[6] *See, e.g., Murphy v. Georgia-Pac. Corp., supra,* 628 F.2d at 866–67.

A further consideration then suggested by *Blanchard* is to inquire into the practices of the industry. Again, Shell, in its statement of uncontested facts, states

[t]hat *it is customary* within the petroleum refining industry *to employ indepen-*

proving that this test has been met. *Elliott v. Louisiana Power & Light Co.*, 671 F.2d 865, 867 n. 1 (5th Cir. 1982); Malone and Johnson, Louisiana Civil Law Treatise: Workers' Compensation, § 126 at 259 (2d ed. 1980).

3. The fact that Shell had employees who were capable of performing the work is not dispositive of the inquiry. *Elliott v. Louisiana Power & Light Co., supra,* 671 F.2d at 867.

4. Shell stated in its Statement of Uncontested Facts
   That it is the custom and practice of Shell Oil Company at the Norco Manufacturing Complex to perform small-scale and medium-scale repair and maintenance work to its cooling towers by using Shell employees, and to contract with outside concerns such as Gulf Coast Cooling Tower Service, Inc. for the performance of large-scale maintenance and repair operations such as that being done on August 5, 1980.
   (R. 81).

5. Melvin Morgan stated in his affidavit

That it is the custom and practice of Shell Oil Company at the Norco Manufacturing Complex to perform small-scale and medium-scale repair and maintenance work to its cooling towers by using Shell employees, and to contract with outside concerns such as Gulf Coast Cooling Tower Service, Inc. for the performance of large-scale maintenance and repair operations such as that being done on August 5, 1980.
(R. 79).

6. *Compare Barnes v. Sun Oil Co.*, 362 So.2d 761, 764 (La.1978) (Sun considered to be the employer of contractor's employees doing repair and maintenance work formerly performed by Sun's own employees, and done by direct employees of other similar employers of the geographic area) *with Duvalle v. Lake Kenilworth, Inc.*, 396 So.2d 1268, 1269 (La.1981) (case specifically distinguished from *Barnes*; from the record it appeared that the work in question was regularly done under contract with a specialty firm.)

*dent contractors* such as Gulf Coast Cooling Tower Service, Inc. to perform the type of work being performed by Gulf Coast Cooling Tower Service, Inc. on August 5, 1980. (Emphasis added.)[7]

The plaintiff's deposition states that this type of work is never performed by Shell employees and does not form any part of Shell's usual and customary business. The defendants argue on appeal that the plaintiff's affidavit is not based on "personal knowledge" and, therefore, does not meet the requirements of Fed.R.Civ.P. 56(e). However, we need not decide whether the district court erred in refusing to consider this deposition testimony as raising a factual dispute:

Under the factual showing of the defendant Shell itself, the work being done by the plaintiff Williams' contractor-employer was shown to be not part of Shell's trade, business, or occupation so as to constitute Shell a tort-immune employer of Williams: (1) Shell did not itself customarily perform the type of work done by Williams' immediate employer, the contractor Gulf Coast; and (2) the contractor-employer's work is not an integral part of the work customarily performed by the employees of the principal Shell.[8]

*Conclusion*

Accordingly, we find that the defendants have failed to sustain their burden of proving that no material issue of fact exists regarding the statutory employment relationship between Shell Oil and Williams and that summary judgment was improperly granted. Accordingly, we REVERSE the district court's grant of summary judgment.

---

7. In *Duvalle v. Lake Kenilworth, Inc.*, 396 So.2d 1268 (La.1981), the supreme court reversed a summary judgment granted to a self-claimed tort-immune statutory employer. In so doing, the Louisiana Supreme Court stated, 396 So.2d at 1269:

> The affidavits and deposition filed by the parties raise material issues of fact. It cannot be determined conclusively from the evidence of record whether the pest control services performed by Dennis Miller were part of Lake Kenilworth's trade, business or occupation. From the deposition of the apartment company's property manager, it appears that application of pesticides to the apartment interiors had always been done under contract by a firm specializing in this work.

See also, to similar effect, *Thompson v. South Central Bell Telephone Company*, 411 So.2d 26 (La.1982).

8. To reiterate, the situation is distinguishable from that in *Barnes v. Sun Oil Co., supra*, 362 So.2d 761, see note 6, where the activity in which the contractor's employee was engaged in was routine repair work customarily per-

formed by employees of the principal as well as by those of other oil companies in the area. There, summary judgment was affirmed as properly granted in upholding the principal's statutory-employer defense. In *Darville v. Texaco, Inc.*, 674 F.2d 443 (5th Cir. 1982) (1982), and in *Ortego v. Union Oil Co. of California*, 667 F.2d 1241 (5th Cir. 1982), the issue apparently posed was whether recurrent workover or ordinary maintenance and repair work were an integral part of the defendant oil company's trade business or occupation; they did not, apparently, involve a factual showing that the type of repair work there involved was always contracted out to independent contractors by both the defendant principal and all others involved in the same trade, business, or occupation. *See, e.g., Darville, supra*, 674 F.2d at 445: "In eight of the nine refineries where vacuum trucks are used to clear the API separators, Texaco [the defendant principal] personnel are utilized in the cleaning operation [in which the plaintiff Darville was injured while working for an independent contractor employed by Texaco to perform the same work at another plant]."