**William E. HODGES, Jr.**

v.

**EXXON CORPORATION.**

Civ. A. No. 81–570–B.

United States District Court, M.D. Louisiana.

May 10, 1983.

Vincent J. DeSalvo, George & George, Ltd., Baton Rouge, La., for plaintiff.

John W. Perry, Jr., Owen, Richardson, Taylor, Mathews & Atkinson, Baton Rouge, La., for intervenor, United States Fidelity & Guar. Co.

William J. Sommers, Jr., New Orleans, La., for Exxon Corp.

Frank A. Fertitta, Lane & Clesi, Baton Rouge, La., for Nat. Maintenance Corp.

POLOZOLA, District Judge:

This diversity action is before the Court on the motion of the defendant, Exxon Corporation, for summary judgment. A similar motion was denied by the Court on November 12, 1982. Since that time, the Fifth Circuit Court of Appeals has rendered its decision in *Blanchard v. Gulf Oil Corporation,* 696 F.2d 395 (5th Cir.1983). Exxon has now reurged its motion for summary judgment. No oral argument is required on this motion. The Court believes Exxon's motion for summary judgment should be granted.

The plaintiff, William E. Hodges, Jr., contends that he was injured on August 7, 1980, while engaged in the course and scope of his employment as a pipefitter with National Maintenance Corporation at Exxon's chemical plant in Baton Rouge, Louisiana. The plaintiff was injured when a sight glass on a reactor unit at the plant exploded. Exxon contends that it may not be liable to the plaintiff in tort because it was Hodge's "statutory employer" under Louisiana's Workmen's Compensation laws at the time of his injury. A careful review of the evidence presented in this case reveals that Exxon was the statutory employer of the plaintiff at the time plaintiff was injured. Thus, plaintiff's exclusive remedy against Exxon is under the Louisiana Workmen's Compensation Act. It is clear that *Blanchard v. Gulf Oil Corporation,* supra, is applicable under the facts of this case. Because the Court finds there are no material issues of fact in dispute and that defendant is, as a matter of law, entitled to summary judgment herein, Exxon's motion for summary judgment is hereby granted.

The record reflects that National Maintenance had provided a crew of workers to perform a maintenance operation at the Exxon plant. Hodges was one of three pipefitters assigned to this job, along with a foreman, a supervisor, and possibly a welder. (Deposition of Douglas Orin Palmintier at pp. 6, 7; Deposition of James L. Pruyn at pp. 6, 7) The job, known as a turnaround, required the workers to replace steel heating coils and other parts in an eighteen foot high reactor vessel used in manufacturing chemicals known as plasticize product or plasticizers. (Deposition of Clifford Cobb at pp. 5, 9, 13, 64–65) To do this, it was necessary to remove the top of the vessel to get to the interior. (Cobb Dep., p. 9) After the coils were replaced and the vessel was reassembled, National Maintenance proceeded to hydrotest the vessel (Pruyn Dep., p. 8; Deposition of Henry Christopher Wailes at pp. 6–7) This procedure required the vessel to be filled with water and the hydrostatic pressure inside the vessel to be brought up in order to check the vessel for leaks. (Pruyn Dep., p. 11) Hodges was using an air hose to blow water off of a sight glass (port hole) on the pressurized vessel when the sight glass exploded and injured him. (Pruyn Dep., p. 19).

The deposition testimony, including that of Hodges, unequivocally indicates that the turnaround which National Maintenance was hired to perform was considered to be mere repair and maintenance work at the Exxon plant. (Deposition of William E. Hodges, Jr. at p. 6, lines 24–25, and p. 16, line 24, p. 17, line 2; Palmintier Dep. p. 8, lines 4–14, p. 24, lines 21–25; Deposition of Lester Hunter Lewis at p. 7, line 20, p. 8, line 3) Clifford Lea Cobb, the Exxon supervisor for the area of the plant involved, testified that coils in the various plant reactors had to be replaced every six to eight years because chemical reactions within the vessel eventually would erode these parts. (Cobb Dep. pp. 68–69) Douglas Orin Palmintier, National Maintenance's supervisor on the job, testified that with proper supervision, any pipefitter could perform the work involved. (Palmintier Dep. p. 9, lines 7–10) Henry Christopher Wailes, who, as senior engineering technician for Exxon was responsible for seeing to it that the work done on the equipment in question was performed properly (Wailes Dep. pp. 4–5), testified that Exxon retained pipefitters and machinists who were trained to do any type of mechanical work inside of Exxon's facilities and there was no reason that Exxon's people could not have done the job in question. (Wailes Dep. pp. 41–42) Wailes also stated that the training pro-

gram which the plant had given him trained him to replace reactor coils and that the training received by other Exxon employees was comparable. (Wailes Dep. p. 42) Clifford Cobb testified that Exxon employed ninety pipefitters and forty-five machinists at the plant who could have done the work which Hodges was doing at the time of the accident. (Cobb Dep. p. 8, lines 3–5) Cobb stated that during the previous year, Exxon employees had gone into the particular reactor involved, repaired the coils and hydro-tested the vessel. (Cobb Dep. pp. 74–75) On two other reactors Exxon employees had completely replaced the coils. (Cobb Dep. p. 74, lines 5–10, p. 75, lines 7–10) Palmintier testified that Exxon personnel instructed him as to how the work was to be done, including the details. (Palmintier Dep. p. 9, lines 11–20) Palmintier also said that Cobb made periodic inspections of the work (Palmintier Dep. p. 26, lines 23–25), and when a leak was found in the sight glass, ordered the National Maintenance foreman to depressurize the reactor and tighten the glass. (Palmintier Dep. pp. 11, 18–19) Cobb stated that while he did not tell National Maintenance exactly how to perform the details of the work (Cobb Dep. p. 21, lines 3–11), Exxon personnel provided National Maintenance with a job plan (Cobb Dep. p. 19, lines 22–23, p. 20, lines 17–18), provided needed information and equipment (Cobb Dep. p. 20, lines 20–23), initialed the time sheets of National Maintenance employees (Cobb Dep. p. 21, lines 24–25), and had the authority to give orders to the National Maintenance foreman. (Cobb Dep. p. 20, lines 8–11) Cobb stated that he did not know why Exxon employees were not utilized for this turnaround. (Cobb Dep. p. 7)

Exxon also relies upon the affidavit of Thomas Michael Beckers in support of its motion for summary judgment. Beckers states in his affidavit that he has been employed by Exxon since June, 1978 and that he presently serves as maintenance section supervisor in the Oxo Plasticizer Department of the Exxon Chemical Plant in Baton Rouge. In this capacity he is personally charged with the responsibility for the regular maintenance of mechanical equipment used in the manufacture of plasticizer products and is personally familiar with the day to day operations of Exxon.

Beckers states that, based upon the knowledge acquired by him in the performance of his duties, reactor units are equipment used in Exxon's manufacture of plasticizers and are essential to the process. Beckers also states that he has personal knowledge that at the time of Hodges' injury, Exxon employed ninety pipefitters, any of whom could have performed any of the work performed by the plaintiff or the other National Maintenance pipefitters. Beckers further states that National Maintenance was contracted to do the work in question because of the unavailability of Exxon workers due to a work overload in the plant combined with time restraints. According to Beckers, under normal workload conditions Exxon employees would have customarily performed such work.

Hodges attacks Beckers' affidavit on the grounds that it inadequately sets forth facts from which the Court may determine that the affiant has personal knowledge of the facts set forth in it. Rule 56(e) of the Federal Rules of Civil Procedure requires that an affidavit "show affirmatively that the affiant is competent to testify to the matters stated therein." Hodges cites dicta in the opinion of the Louisiana Supreme Court in *Barnes v. Sun Oil Co.,* 362 So.2d 761 (La.1978) in arguing that Beckers' statement of his position with Exxon is insufficient to validate his affidavit.

Despite the dicta in *Barnes,* more closely analogous Federal jurisprudence interpreting Fed.R.Civ.P. 56(e) has held that "An official title alone is enough to indicate the basis of personal knowledge when ... that title clearly identifies the official's sphere of responsibility and the facts stated in the affidavit are within that sphere." *Rutledge v. Liability Ins. Industry,* 487 F.Supp. 5 (W.D.La.1979). Furthermore, in *Ondis v. Barrows,* 538 F.2d 904 (1st Cir.1976) the United States Court of Appeals for the First Circuit held that an affiant's aver-

ment that he was office manager for a brokerage firm when the firm underwrote a particular offer was sufficient to enable him to testify that the stock offered was not registered on any national securities exchange and was not listed on the Federal Reserve Board's list of OTC margin stocks.

The Court finds that Beckers' averments that he is the Maintenance Section Supervisor of the particular plant involved here and is responsible for the maintenance of all the equipment utilized in that unit sufficiently indicates his familiarity with its workings and its importance to Exxon's manufacturing business, as well as Exxon's present practice regarding maintenance of the equipment. This is especially so in light of the corroboration through other testimony that the reactors are necessary in conducting Exxon's business of manufacturing plasticizer, the coils in them must be regularly changed (Cobb Dep. pp. 5, 64–65, 68–69) and Exxon's pipefitters can and have performed such work.

The Court now turns to a discussion of the jurisprudence and statutory law in Louisiana.

R.S. 23:1061 makes a statutory employer liable for workmen's compensation to his statutory employee as if a true employment relation exists between them. Section 1061 provides:

> Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the

principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

> Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

R.S. 23:1032 clearly makes the compensation remedy of Section 1061 the employee's exclusive remedy against his statutory employer. Before Section 1032 was amended, the courts had already reached the same result. *Thibodaux v. Sun Oil Co.*, 218 La. 453, 49 So.2d 852 (1950). Section 1032 reads, in pertinent part:

> The rights and remedies herein granted to an employee or his dependent * * * shall be exclusive of all other rights, and remedies of such employee * * * against his employer, or any principal. * * * For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. * * *

■ Thus, if Exxon is Hodges' statutory employer plaintiff's tort claim is barred. Exxon's status depends upon whether the work in which Hodges was engaged at the time of his injury was part of Exxon's "trade, business or occupation". In *Blanchard v. Engine & Gas Compressors Services, Inc.*, 613 F.2d 65, 71 (5 Cir.1980) the Fifth Circuit set forth the following standard for the Court to follow in resolving this issue:

> The proper standard, as we see it, is whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business.

More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship, and the inquiry ends there.

In a more recent opinion in the same case, *Blanchard v. Gulf Oil Corp.*, supra, the Fifth Circuit Court of Appeals affirmed the district court's decision on remand which had granted the motion of Gulf Oil Corp. for summary judgment. The Court finds this latest opinion in *Blanchard* indistinguishable from the case at bar. In *Blanchard*, it was found that the compressor engines being repaired by the plaintiff were necessary to Gulf's business of producing oil and gas. It was also found that Gulf employees were capable of, and, in fact, had done, the exact work being performed by the plaintiff at the time of his injury. As is true in this case, the plaintiff's employer in *Blanchard* was performing maintenance on an "as requested" basis. Gulf maintained, as does Exxon in this case, a great deal of control over the work being done by the plaintiff's employer.

A similar result was reached in *Darville v. Texaco, Inc.*, 674 F.2d 443 (5th Cir.1982). In the *Darville* case, the plaintiff's decedent was killed while vacuuming an American Petroleum Institute (API) Separator at a Texaco, Inc. refinery. The company for which he worked was under contract with Texaco to provide vacuum trucks and operators on a call-out basis to remove acid, caustic oil, water, sludge, liquid hydrocarbons, and their mixtures accumulating in the API Separator. The Court concluded that, although Texaco was not in the business of producing hydrocarbon and chemical sludge, the cleaning of the separator was an integral part of Texaco's business because the refinery could not otherwise remain on line. The Court recognized that the fact that work is "essential to the business of the principal" is not dispositive of the statu-

tory employer issue, but nevertheless held that it was a fact to be considered. Apparently this fact was relied upon heavily by the Court in reaching its decision. See 674 F.2d at 445–446. It is uncontroverted here that the replacement of coils in reactor units is essential to Exxon's business of making plasticizers.

The Court in *Darville v. Texaco, Inc.* also relied upon the fact that the work done by the plaintiff there constituted maintenance and repair of the statutory employer's equipment rather than the construction of new facilities. The Court quoted from *Guinn v. Progress Drilling, Inc.*, 398 So.2d 128, 130 (La.App. 3d Cir.1981) wherein the Court held that it "is settled that ordinary maintenance and repairs are part of an employer's regular business, trade and occupation." 674 F.2d at 446. The Court in *Boudreaux v. Boudreaux*, 369 So.2d 1117, 1119 (La.App. 1st Cir.1979) likewise stated that ". . . it is well established that as a general rule routine repairs and maintenance, as contrasted with new or additional construction, are part of the regular business of a manufacturing plant." See also *Duplechin v. Pittsburgh Plate Glass Co.*, 265 So.2d 787 (La.App. 3d Cir.1972) at 790. This distinction is noted as well by Professors Malone and Johnson in Malone and Johnson, 13 Louisiana Civil Law Treatise, *Workers' Compensation*, § 126 at pp. 255–6. It appears to have largely determined the Louisiana Supreme Court's decision in *Barnes v. Sun Oil Co.*, supra, where work was found to be part of the "trade, business or occupation" of the defendant, Sun Oil, because it "consisted of repair and maintenance services performed regularly as an essential and integral part of Sun's business." 362 So.2d at 764. Predictably, that Court reached the opposite conclusion in *Reeves v. Louisiana & Arkansas Ry. Co.*, 282 So.2d 503 (La.1973) where the work was characterized as new construction.

The plaintiff relies on *Williams v. Shell Oil Company*, 677 F.2d 506 (5th Cir.1982). The *Williams* case may be distinguishable. *Williams* involved the employee of an independent contractor hired to perform major

repair and maintenance work on a "cooling tower" at a Shell refinery. The Fifth Circuit reversed the district court's granting of a summary judgment in Shell's favor. Of crucial importance to this finding, however, was the fact that, according to Shell's own affidavits, Shell customarily contracted with outside concerns to perform the type of large scale repairs involved in that case. By its own statements, the job being done by the contractor was not that customarily or regularly performed by Shell itself through its employee. 677 F.2d at 509. Furthermore, in its own statement of uncontested facts Shell alleged that it was customary in the industry to employ independent contractors to perform the work in question rather than to use in-house employees. On the other hand, there is no evidence in this case that Exxon ever contracted the work in question out to contractors other than the instance involved. On the contrary, Clifford Cobb testified in deposition that he had seen Exxon employees go into the unit involved and repair the coils and hydrotest the unit and that he had seen the coils replaced (the general purpose of the job on which plaintiff was employed) on another unit. (Cobb Deposition pp. 74–75) These facts indicate that the job involved, unlike that in *Williams,* was not so large that Exxon would not attempt it itself. Other testimony indicates that the more specific work involved, hydrotesting units, was done very frequently by Exxon employees. The replacement of reactor coils was a regular occurrence, although not done frequently because of the life span of the coils (Cobb Dep. pp. 68–69).

*Williams* is, therefore, distinguishable, as it was in *Blanchard,* 696 F.2d at 398 n. 5, on the fact that *Williams* involved a more extensive project than that which was involved in this case. Furthermore, as noted earlier, Exxon maintained, as did Gulf in *Blanchard,* a significant amount of control over the work done by National Maintenance.

Several other recent Fifth Circuit cases have held summary judgment proper in factual circumstances similar to those presented in this case, i.e., where the plaintiff was performing regular repair and maintenance work for the defendant. *Barrios v. Engine & Gas Compressor Services, Inc.,* 669 F.2d 350 (5th Cir.1982); *Ortego v. Union Oil Co.,* 667 F.2d 1241 (5th Cir.1982); *Forno v. Gulf Oil Corporation,* 699 F.2d 795 (5th Cir.1983).

Thus, the Court finds as a matter of fact and law, that Exxon is entitled to a summary judgment in this case. It is clear that the work the plaintiff and his employer were performing at the time of plaintiff's injury was an integral part of Exxon's work. Thus, Exxon was clearly a statutory employer of the plaintiff.

Therefore:

IT IS ORDERED that the motion of Exxon Corporation for summary judgment be and it is hereby GRANTED.

IT IS FURTHER ORDERED that plaintiff's suit be dismissed at plaintiff's cost with prejudice.

Judgment shall be entered accordingly.