**Delays and Sharilyn BROCK**

v.

**CHEVRON CHEMICAL COMPANY.**

**Civ. A. No. 89–5393.**

United States District Court,
E.D. Louisiana.

Nov. 19, 1990.

David Joseph Kain, Stanley Joseph Jacobs, Kenneth Wayne Manuel, Lawrence D. Wiedemann, New Orleans, La., for plaintiffs.

Len R. Brignac, George R. Jurgens, III, New Orleans, La., for defendant.

ROBERT F. COLLINS, District Judge.

Plaintiffs, Delays Brock and Sharilyn Brock, filed the above-captioned action against Chevron Chemical Company ("Chevron") for injuries allegedly sustained by Delays Brock on August 28, 1989, when he slipped and fell in oil or grease at Chevron's Oak Point plant near Belle Chasse, Louisiana. At the time of his alleged acci-

dent, Mr. Brock was working as a firewatch hand for J.E. Merit Constructors, Inc. ("J.E. Merit").[1] Defendant, Chevron, now moves this Court for summary judgment dismissing plaintiffs' claims pursuant to Rule 56, Fed.R.Civ.P., on the grounds that Delays Brock is the statutory employee of Chevron, and Chevron is immune from tort liability to plaintiff. This motion is GRANTED.

## I.

█ The Louisiana Worker's Compensation Act, La.Rev.Stat.Ann. § 23:1021, *et seq.* ("the Act"), provides the exclusive remedy for employees who sustain injuries arising out of and in the course and scope of their employment. Under the Act, tort immunity extends beyond the employee's immediate employer. A party who contracts with another for the performance of work that is part of his "trade, business or occupation" is also entitled to tort immunity. La.Rev.Stat.Ann. § 23:1061 (West 1985 & Supp.1990). Such a party is referred to as a principal or statutory employer.

In 1986, the Louisiana Supreme Court in *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La.1986), established a three part test to resolve statutory employer claims. The first part of the test involves an examination of whether the contract work is specialized or nonspecialized. To make this determination, "the Court should consider whether the contract work requires a degree of skill, training, experience, education and/or equipment not normally possessed by those outside the contract field." *Id.* at 938. If the Court finds that the contract work is specialized, the principal is not the statutory employer of the contractor's employees.

The second level of the analysis involves a comparison of the contract work to the trade, business or occupation of the principal to see if the contract work can be considered a part of the principal's trade, business or occupation. There are several guidelines which the *Berry* Court enumerated to help resolve this issue:

(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal are within the scope of coverage....

(2) Does the principal have the equipment and/or manpower capable of performing the contract work? ... Here the primary focus is on determining whether the contract work as relates to the principal is handled ordinarily through employees....

(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work? (Citations omitted.)

*Id.* at 938.

The third part of the *Berry* test involves a determination by the Court of whether the principal is actually engaged in its trade, business or occupation at the time of the injury. *Id.* at 938–39.

Prior to the *Berry* decision, Louisiana courts held that a statutory employment relationship was created when a principal contracted with a contractor to perform any work which was "an integral and/or essential part (or other synonyms) of the trade, business or occupation of the principal." *Id.* at 937 (citations omitted). Until *Berry*, this language had been broadly construed by the courts. *See id.* Thus, as a result of the *Berry* decision, a far less expansive test for determining a principal's tort immunity was made controlling in Louisiana.[2]

---

1. A firewatch hand is a worker who prepares an area for "hot work," such as welding, gouging and burning. A firewatch hand is responsible for making sure that the work area is free of combustible hazards and that the area remains safe for welders and others who bring combustible equipment into the work area.

2. The *Berry* court mentioned that the precursory decisions in *Benson v. Seagraves*, 436 So.2d 525 (La.1983), *Lewis v. Exxon Corp.*, 441 So.2d 192

## II.

The test fashioned by the *Berry* court was predicated on its interpretation of La. Rev.Stat.Ann. § 23:1061.[3] In 1989, the Louisiana Legislature amended section 23:1061, effective January 1, 1990. As amended, section 23:1061 provides, in pertinent part:

When any person, in this Section referred to as the "principal," undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor," for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. *The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.*

La.Rev.Stat.Ann. § 23:1061 (West Supp. 1990) (emphasis added).

By enacting the 1989 amendment to section 23:1061, the Louisiana Legislature expressed its disfavor for the *Berry* court's interpretation of section 23:1061. The Legislature rejected the three-part *Berry* test, specifically declaring that a principal's obligations will not be determined by whether work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable. Instead, the Legislature chose to return to a liberal standard for principal tort immunity; all that is required now, under section 23:1061, is a finding that contract work was part of the principal's trade, business or occupation.

## III.

The application of the 1989 amendment of section 23:1061 to the instant case would require a finding by this Court that J.E. Merit and Delays Brock were performing work that was a part of Chevron's trade, business or occupation, and that Chevron is

(La.1983), and *Rowe v. Northwestern National Ins. Co.,* 471 So.2d 226 (La.1985), marked the beginning of the Louisiana Supreme Court's departure from the more liberal view of when the statutory employer doctrine should be applied. *Berry,* 488 So.2d at 937. However, it was not until *Berry* that the Court set forth a concise "method of analysis" in line with the restrictive interpretation of the doctrine. *Id.*

3. At the time the Louisiana Supreme Court rendered its decision in *Berry,* section 23:1061 read, in pertinent part, as follows:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

La.Rev.Stat.Ann. § 23:1061 (West 1985) (amended 1989).

entitled to tort immunity as Mr. Brock's statutory employer.

The test for determining whether a worker is performing work that is within the "trade, business or occupation" of the principal was first set forth in the seminal case of *Thibodaux v. Sun Oil Company*, 40 So.2d 761 (La.Ct.App. 1st Cir.1949), *aff'd*, 218 La. 453, 49 So.2d 852 (1950). In *Thibodaux*, the Louisiana Supreme Court held that the statutory employer-employee relationship exists whenever the work done by the employee is essential to the principal's business.

In the instant matter, the firewatch duties performed by the J.E. Merit employees were essential to Chevron's business. A chemical plant, such as Chevron's Oak Point plant, must necessarily undergo routine maintenance, including fabrication and refabrication work. Hot work is performed on a daily basis, and fire protection during such work at a fuel additives plant is an absolute necessity. A firewatch hand must always stand by during all hot work at the plant. Chevron's plant could not operate without firewatch protection. On a daily basis, Mr. Brock and other J.E. Merit personnel performed these essential firewatch duties to insure that if sparks ignited a combustible substance, the flames would be quickly extinguished.

■ Although the Court finds Chevron to be plaintiff's statutory employer, as that term is defined by section 23:1061, as amended, the critical question to be answered is whether or not the revised statute can be used in this case at all. Since the effective date of the amendment to the statute was January 1, 1990, the date of plaintiff's alleged accident was August 28, 1989, and the date the suit was filed was December 18, 1989, the Court must determine if section 23:1061 is the type of statute that can be applied retroactively under Louisiana law.

## IV.

The standards used to determine the retroactive or prospective effect of Louisiana statutes are set forth in Article 6 of the Louisiana Civil Code. According to the Article, "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and Interpretative laws apply both prospectively and retroactively unless there is a legislative expression to the contrary." La.Civ.Code Ann. art. 6 (West Supp.1990). It is the position of Chevron that section 23:1061, as amended, can be applied in this matter because it is an interpretive statute.

A situation similar to the one at hand was faced by the Court in *Laubie v. Sonesta International Hotel Corp.*, 587 F.Supp. 457 (E.D.La.1984), *aff'd*, 752 F.2d 165 (5th Cir.1985). In *Laubie*, the court addressed whether a Louisiana statute that limited the liability of innkeepers for delictual or contractual damages had retroactive effect. Plaintiffs, Andre and Paulette Laubie, originally brought suit against the Royal Sonesta Hotel claiming that the negligence of its hotel employees was a cause of the theft of their jewelry. Plaintiffs further argued that a Louisiana statute that limited an innkeeper's liability for property loss to $100.00 did not apply to claims sounding in tort. The district judge disagreed and dismissed the lawsuit for lack of jurisdictional amount.

The Fifth Circuit certified the question to the Louisiana Supreme Court which responded that the statute limited an innkeeper's liability for contractual damages only. Following the Supreme Court's ruling, the Legislature amended the statute to specifically provide that the limitation of liability applied to delictual as well as contractual claims.

The District Court was then asked to decide whether the amended statute had retroactive effect to the case before it. The Court first noted that an amended act takes precedence over the judicial interpretation of a statute. *Id.* at 459. The *Laubie* court then traced the history of the amendment to the statute and concluded that the Legislature was obviously reacting to the Supreme Court's response to the certified questions in *Laubie*. Prior to the amendment, the Legislature had left the statute untouched for seventy years.

Based on these facts, the Court held that the legislation was a reaction to an incor-

rect judicial interpretation of the statute, and the purpose of the amendment was to add clarifying language. In fact, the language in the amendment was derived directly from the language used by the Supreme Court in its response to the certified questions. The *Laubie* court then determined that the amendment was an interpretive measure that did not disturb vested rights but merely established the meaning of the statute from the time of its enactment. *Id.* at 459–60. Under those circumstances, the court applied the amendment retroactively and dismissed the case.

The amendment to section 23:1061 parallels the amendment that was addressed by the court in *Laubie*. The Louisiana Supreme Court in *Berry* added a judicial gloss to section 23:1061 by establishing a three-part test to resolve statutory employer issues. The 1989 amendment to section 23:1061, however, specifically rejects the *Berry* test. As with the legislative response to the statute at issue in *Laubie*, the Legislature incorporated the language used by the *Berry* court into the statute and excluded its application with respect to statutory employer analysis. Thus, because the 1989 amendment is merely interpretative of prior law and does not disturb vested rights, we find that section 23:1061 has retroactive application to the instant case.

In his opposition memorandum to Chevron's Motion for Summary Judgment, plaintiff cites four Louisiana appeals court decisions which were handed down in 1990 for the proposition that section 23:1061 is not being applied retroactively in Louisiana. Plaintiff contends that in each of these cases, the courts applied the *Berry* test in the determination of statutory employee status. *Tujague v. Louisiana Department of Corrections*, 559 So.2d 1 (La. Ct.App. 1st Cir.1990); *Beddingfield v. Standard Construction Company, Inc.*, 560 So.2d 490 (La.Ct.App. 1st Cir.1990); *LeBlanc v. Alton–Ochsner Medical Founda-*

tion, 563 So.2d 312 (La.Ct.App. 5th Cir. 1990); *Rosier v. H.A. Lott, Inc.*, 563 So.2d 1321 (La.Ct.App. 3rd Cir.1990).

We find plaintiff's contention to be of no merit. These appellate cases did not in any way address or discuss the retroactive application of the 1990 amendment to section 23:1061. Moreover, the trial phase of the *Tujague, Beddingfield, LeBlanc* and *Rosier* cases occurred prior to the time the amendment to section 23:1061 was enacted by the Legislature and became law; therefore, the question of the statute's retroactivity could not have been an issue before the trial court.[4] Thus, contrary to plaintiff's argument in his opposition memorandum, these cases do not support his notion that the amendment should be applied prospectively.

For the reasons stated above, the Court finds that Chevron is the statutory employer of plaintiff, Delays Brock. Accordingly, summary judgment is hereby GRANTED in favor of defendant, Chevron Chemical Company. The claims of plaintiffs, Delays Brock and Sharilyn Brock, against Chevron Chemical Company are hereby DISMISSED WITH PREJUDICE.

---

**4.** Furthermore, plaintiffs incorrectly cite the *Beddingfield* and *Rosier* cases as applying the *Berry* test. Both the *Beddingfield* and *Rosier* courts addressed the question of a general contractor's entitlement to tort immunity as the statutory employer of an injured worker of its

sub-contractor; this is commonly referred to as the "two contract" statutory employer defense. It has been held expressly that the *Berry* analysis is not controlling in matters involving the "two contract" theory of tort immunity. *Berry,* 488 So.2d at 936, n. 3; *Rosier,* 563 So.2d at 1324.