**Ralph DUHON, et ux.**

v.

**CONOCO, INC., et al.**

**Civ. A. No. 91–1144–LC.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 18, 1992.

Charles A. Riddle, Marksville, La., for plaintiffs.

James R. Morris, Lake Charles, La., for defendants.

### REASONS FOR RULING

TRIMBLE, District Judge.

Ralph Duhon ("DUHON"), the plaintiff herein, is a divorced father of six, who was

---

trained as a carpenter. He is divorced from Charlotte Prejean Duhon, also a plaintiff herein, with whom he had three of his six children. Although trained as a carpenter, the plaintiff had a sporadic employment history and had not worked in that capacity for a number of years prior to the accident that gave rise to this suit.

In approximately March, 1990, International Maintenance Corporation ("IMC") contracted with Conoco, INC. ("CONOCO") to perform a maintenance turnaround of the Conoco refinery in Westlake, Louisiana. According to the Conoco maintenance superintendent, Brian Doerkson, this was the first time since he arrived at the Conoco plant in 1985 that the entire plant was shut down for a five day period. The complete turnaround lasted much longer than five days, but this was the only period of time that the entire plant was shut down. Doerkson further testified that another total turnaround is scheduled for the spring of 1993 and the work will be done by another maintenance contractor such as IMC.

The plaintiff began working with IMC in April or May of 1990, and had worked the turnaround, being classified as a boilermaker, approximately eleven days prior to the accident on May 9, 1990. On May 9, 1990, Duhon was working the night shift when he fell from Drum D–316 while changing a 6″ flange located at the top of the drum. The drum is cylindrical in nature with two to one elliptical heads on both ends. The drum is made of steel, which is covered with 2″ thick insulation, and is then covered again by an aluminum jacket which is screwed and banded in place. The drum is elevated, and the top is approximately nine feet from the cement floor. When Duhon fell he injured his right foot and ankle.

On May 9, 1990, there was a total shutdown of the Conoco plant. IMC and other contractors were present in the plant during the shutdown, which included the alky unit where DUHON was working. Doerkson testified that Conoco had on its permanent payroll twelve carpenters, twenty electricians, thirty-two pipefitters, twenty-one welders and twelve utility helpers who were capable of doing all of the work done during the turnaround by the IMC workers, even though it would have taken much longer for the Conoco workers alone to complete the job. Conoco had no workers classified as boilermakers, but the Conoco welders and pipefitters were capable of and actually did perform the exact work done by the IMC boilermakers. When asked on cross examination if Conoco was attempting to secure specialized services to complete the work, Doerkson testified that he did not consider pipefitters and boilermakers as specialized crafts. He did not consider it a specialty because he believed that other contractors could supply the same services. This entire line of questioning was conducted subject to the defense's objection that the question of specialized services are irrelevant in the context of a statutory employer, which Conoco was claiming to be. Conoco includes "boilermakers" in the pipefitter category and those jobs performed by boilermakers were performed by Conoco pipefitters and welders. Doerkson also testified that although Conoco's principal business is that of refining oil, Conoco personnel do maintenance and minor capital improvements around the plant.

Doerkson testified that maintaining the refinery by performing periodic turnarounds is "absolutely essential" to the refining process. Despite repeated questioning by plaintiff's counsel, Doerkson would not concede the fact that the work of IMC carpenters, boilermakers or welders was "specialized", in that it did not require any particular degree of skill other than that possessed by anyone certified in these crafts, including Conoco personnel.

Raymond Gunnels ("GUNNELS") of IMC and Andrew Thomas ("THOMAS"), IMC safety coordinator, both testified that it was IMC's duty to train its personnel concerning safety procedures and to provide the necessary personnel to assure that those safety procedures were carried out. Both testified that the IMC workers had been instructed not to climb across a tank when scaffolding was present, as it was in this case. If the workers needed to cross

the tank, they were to descend the scaffolding on one side and climb up the scaffolding on the other. No one could offer any proof, however, that the plaintiff had personally benefitted from these instructions. It was also their testimony that these instructions were routinely ignored and although workers caught crossing at the top would be reprimanded, it appears to be a quite common practice.

On May 9, DUHON was employed as a boilermaker-helper and was working with Chris Chenevert removing blinds from the flanges attached to the D–316 drum of the alky unit. Duhon was working on the easternmost flange, which was approximately twenty three inches from the end of the drum. Attached to the flange was a valve which extended to the east, causing a further reduction in space at the end of the drum. The insulation hugged the metal of the drum with the exception of the elliptical ends which extended outward with flat ends, creating a void on the end of each cylinder. When the plaintiff had completed his work on the north set of flange bolts, he attempted to cross the drum at the end to work on the other side, rather than descend the scaffolding to cross over. As he stepped out, the insulation gave way and he fell to the cement nine feet below. Mr. Duhon sustained significant injuries, and medical expenses and weekly benefits have been paid by National Union Fire Insurance Company and/or IMC. IMC and National Union Fire Insurance Company have intervened to recover these payments.

■ Conoco is arguing that Duhon is barred by the Louisiana Worker's Compensation Act from asserting any *ex delicto* claim against Conoco for the injuries he sustained in this work-related accident. Under Louisiana law compensation benefits are an employee's exclusive remedy against a statutory employer. La.R.S. 23:1032; La.R.S. 23:1044; La.R.S. 23:1061. The Louisiana Supreme Court in *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La.1986), which was a culmination of years of jurisprudential development of the definition of a statutory employer, established a three-prong analysis:

1) Is the contract work specialized? If so, then as a matter of law, the contract work is not part of the principal's trade, business or occupation and the principal is not the statutory employer.

2) If non-specialized, comparing the contract work with the principal's trade, business or occupation, can it be a part thereof in light of three inquiries:

   a. is it routine and customary, i.e., regular and predictable;

   b. does the principal have the equipment and personnel capable of performing the work; and

   c. what is the practice in the industry?

3) Was the principal engaged in the contract work at the time of the injury?

In 1989, the Louisiana Legislature amended R.S. 23:1061, effective January 1, 1990, four months prior to the subject accident, by adding the following sentence. Acts 1989, No. 454 § 3:

"The fact that the work is specialized or nonspecialized, is extraordinary construction, or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered as part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work."

This amendment broadened the reach of the statutory employer designation. The amendment tracks the language of the first two prongs of the *Berry* analysis and then explicitly rejects the determinative nature of those queries.

■ La.R.S. 23:1044 states that a person rendering service for another in any trade, business or occupation covered under the worker's compensation law is presumed to be an employee for the purposes thereof. Upon the establishment of his status as an independent contractor, however, this presumption is rebuttable. *Dye v. Ipik Door Co.*, 570 So.2d 477 (La.App. 5th Cir.1990). Even if a worker is found to be an independent contractor, he may still

be subject to worker's compensation laws if he is also determined to be a statutory employee under L.S.A. R.S. 23:1032 and 23:1061.

The plaintiff, who did prove that he was an employee of the independent contractor, IMC, in his post-trial brief discusses the application of the "integral relation" test used by Judge Polozola in *Savant v. James River Paper Company, Inc.*, 780 F.Supp. 393 (M.D.La 1992) and by the previous court in *Horrell, et al. v. Gulf & Valley Cotton Oil Company, Inc.*, 131 So. 709 (La.App.1930). In *Horrell*, the court found that the manufacturing concern involved had contracted with an independent contractor for the repair and reconstruction work in its plant; therefore, it held that the repair and reconstruction work was a strictly special job and entirely unrelated to the principal's business, which in that case was manufacturing. The plaintiff asserts that because Conoco is a petroleum refiner, it is not in the business of original construction or necessary reconstruction. Even under the criteria of *Horrell*, as cited in *Thibodaux v. Sun Oil*, 218 La. 453, 49 So.2d 852 (1950), this court cannot agree with the plaintiff's reasoning. Although Conoco is in the business of refining petroleum products, it has on its staff a full complement of workers with the same or better qualifications as the employees with IMC. Those Conoco workers were usually responsible for plant maintenance and minor capital improvements. The turnarounds are essential to the operations of the refinery and Conoco could not complete the turnaround on an accelerated time schedule using their employees alone. Based on these facts, this case can easily be distinguished from *Horrell, Thibodaux*, and *Savant*. The fact that a small portion of this turnaround involved a total shutdown of plant operations does not mean, as proposed by the plaintiff, that Conoco was no longer involved in the operation of its trade when that very shutdown was essential to their continued operations. An employee of an independent contractor performing turnaround work at an oil refinery has been held to be a statutory employee of the refinery under practically identical circumstances in *Seeney v. Citgo Petroleum Corp.*, 848 F.2d 664 (5th Cir.1988).

The court in *Brock v. Chevron Chemical Co.*, 750 F.Supp. 779, 782 (E.D.La.1990) held that a "worker is performing work that is within the 'trade, business, or occupation' of the principal.... whenever the work done by the employee is essential to the principal's business." [Citing *Thibodaux v. Sun Oil Co.*, 40 So.2d 761 (La.App. 1st Cir.), *affirmed* 218 La. 453, 49 So.2d 852 (1950)].

The amended statute unquestionably applies to the facts of the case at bar. Therefore, the work that IMC and its employee, Duhon, were performing is part of Conoco's "trade, business, or occupation", if it was essential to Conoco's operation. *Maddox v. Baker Oil Tools, Inc.*, 774 F.Supp. 419, 422 (E.D.La.1991). The testimony of Doerkson supports Conoco's contention that the work done by IMC during the 1990 shutdown was, in fact, essential to its operations. In view of this determination, this court need not examine any other issues before the court, as Duhon would be a statutory employee, and thus barred from receiving tort damages from Conoco under Louisiana Worker's Compensation law.

## FINDINGS OF FACT

1. The plaintiff was employed by IMC doing work under the designation of boilermaker at the Conoco refinery, specifically on drum D–316 in the alky unit on May 9, 1990.

2. Although Conoco employed no persons designated as boilermakers, it did have a significant number of pipefitters and welders, which together were capable of and did perform work customarily done by boilermakers.

3. Turnaround work, including the type being performed by the plaintiff at the time of the accident, was routinely performed by Conoco employees, but independent contractors were being utilized on May 9, 1990, to supplement the Conoco workers in order to accomplish the turnaround with a minimum of shutdown time. This turnaround was of greater magnitude

than the usual turnaround work in that it encompassed virtually all of the plant at the same time; however, the work performed was within the capability of the regular Conoco employees and was routinely performed by them, just not within the same time strictures.

4. Mr. Duhon, while attempting to climb over the top of the drum, fell when the unsupported insulation at the end of the cylinder gave way under him. As a result of this fall, the plaintiff sustained significant injuries to his right foot and ankle, for which he was paid compensation benefits and reimbursed medical expenses by National Union Fire Insurance Company and/or IMC.

5. The performance of turnaround work of the type being performed by the plaintiff was essential to the operation of Conoco's refinery and was an integral part of its business.

## CONCLUSIONS OF LAW

1. The three prong test formulated by the Louisiana Supreme Court in *Berry v. Holston Well Service, Inc.,* 488 So.2d 934 (La.1986) is not applicable to this case as the accident in question occurred May 9, 1990, four months after the amendment to L.S.A. R.S. 23:1061, which broadened the reach of the statutory employer designation.

2. There is a rebuttable presumption in L.S.A. R.S. 23:1044 that any person rendering service for another in any trade, business or occupation covered by the worker's compensation law is an employee for the purposes thereof.

3. Although the plaintiff in the case at bar was an independent contractor (IMC), he was still subject to worker's compensation laws because he was also a statutory employee of Conoco under L.S.A. R.S. 23:1032 and 23:1061.

4. The applicable test after the 1990 amendment to 23:1061 is the "integral relation" test first set forth by the court in *Horrell, et al. v. Gulf & Valley Cotton Oil Company, Inc.,* 131 So. 709. The work being performed by the plaintiff was inte-

grally related to Conoco's oil refining business.

5. The plaintiff in this case was performing a job that was within the trade, business or occupation of the principal and that work was essential to the employer's business or continued operations; therefore, the plaintiff was a statutory employee. *Brock v. Chevron Chemical Co.,* 750 F.Supp. 779 (E.D.La.1990); *Maddox v. Baker Oil Tools, Inc.,* 774 F.Supp. 419 (E.D.La. 1991).

Accordingly, a judgment will be signed, granting judgment in favor of Conoco and against Ralph Duhon, et ux., and the intervenors, IMC and National Union Fire Insurance Company, at their cost.