James L. SALMON,

v.

EXXON CORPORATION.

No. 92–395–B.

United States District Court, M.D. Louisiana.

April 30, 1993.

Michael A. Lombard, Lombard & Silbert, Metairie, LA, for plaintiff.

William Victor Courtney, Lourdes Estevez Martinez, Louise Van Meter White, Exxon Co., USA, New Orleans, LA, for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

Exxon Corporation filed this motion for summary judgment contending that it is James L. Salmon's statutory employer, and thus it is immune from plaintiff's claim for work-related injuries. For reasons which follow, the Court finds that Exxon is plaintiff's statutory employer. Therefore, defendant's motion for summary judgment is hereby granted.

## FACTS

Exxon Chemical Americas entered into a written contract with UMC of Louisiana, Inc., whereby UMC of Louisiana, Inc. would perform the mechanical portion of a turn-around[1] on the OXO unit located at Exxon Corporation's Baton Rouge Chemical Plant. Exxon Corporation is the owner and operator of the Baton Rouge chemical plant.

Exxon Chemical Americas is a division of Exxon Chemical Company, which is a division of Exxon Corporation.[2] J.E. Merit Constructors, Inc., plaintiff's employer at the time of his injuries, is a wholly-owned subsidiary of Jacob Engineering. At one time, UMC of Louisiana, Inc. was also a subsidiary of Jacob Engineering. When J.E. Merit was created, UMC of Louisiana, Inc. was dissolved and J.E. Merit took its place, performing the same type of work.[3] The obligation of UMC of Louisiana, Inc. under the contract with Exxon Chemical Americas was assigned, with the consent of Exxon Chemical Americas, to J.E. Merit.

---

1. A "turnaround" is a term used to describe the process whereby an operating unit of a plant, such as the OXO unit, is shut down and the machinery, piping systems, vessels, and the like are cleaned, refurbished, overhauled, replaced, and/or updated.

2. Plaintiff contends that Exxon Chemical Americas is a subsidiary of Exxon Chemical Company, and Exxon Chemical Company is a subsidiary of Exxon Chemical Corporation. Plaintiff, therefore, contends that it is entitled to summary judgment based on the separate corporate structures of Exxon Chemical Americas, the party to the contract, and Exxon Chemical Corporation, the owner of the chemical plant. *Smith v. Cotton's Fleet Service, Inc.*, 500 So.2d 759 (La.1987); *Cormier v. Guilbeaux*, 547 So.2d 17 (La.App. 3d Cir.), *writ denied*, 551 So.2d 633 (La.1989).

The Court finds absolutely no evidence to substantiate plaintiff's contention. In support of its contention, plaintiff only refers to a leading question asked by its own counsel in the deposition of Eric Anderson, whose answer reflects that he had little knowledge of the corporate structure of Exxon and its divisions. On the other hand, defendant has provided the affidavit of J.V. Booth and a copy of the contract between Exxon Chemical Americas and UMC of Louisiana, which establish that Exxon Chemical Americas is a division of Exxon Chemical Company, which is a division of Exxon Corporation.

The Court, therefore, finds plaintiff's contention frivolous. The Court further finds that there is no genuine issue of material fact regarding the defendant's corporate structure which may preclude summary judgment.

3. Plaintiff's exhibit B.

Defendant has filed a letter into the record which suggests that UMC of Louisiana, Inc. was a wholly-owned subsidiary of J.E. Merit, UMC of Louisiana, Inc. was dissolved, and J.E. Merit took over the obligations and operations of UMC of Louisiana, Inc. This difference in testimony is irrelevant to the issue now pending before the Court. Defendant's exhibit B.

On April 20, 1992, plaintiff was assigned by J.E. Merit to hydro-test a segment of the piping system on the OXO unit at Exxon Corporation's Baton Rouge Chemical Plant. A hydro-test is a procedure used to detect the presence of leaks in the piping. Plaintiff alleges he sustained his injuries while performing the hydro-test.

Plaintiff originally filed his suit in state court against Exxon Corporation seeking damages for physical injuries he allegedly sustained in the accident while performing work for his employer, J.E. Merit Constructors, at Exxon Corporation's Baton Rouge Chemical Plant. Plaintiff alleges strict liability and negligence as his basis for recovery.

Defendant timely removed this suit to federal court pursuant to 28 U.S.C. § 1441. The Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a)(1).

After removing this suit, defendant filed a motion for summary judgment contending that since it is plaintiff's statutory employer under Louisiana Revised Statutes 23:1061, plaintiff is barred from suing defendant for tort liability under Louisiana Revised Statutes 23:1032. Specifically, defendant contends that it is plaintiff's statutory employer within the meaning of Louisiana Revised Statutes 23:1061, because defendant contracted with J.E. Merit, plaintiff's employer, for J.E. Merit to perform turnaround work on the OXO unit. Exxon argues that the turnaround work is part of defendant's trade, business, or occupation.

## SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[5] In opposing the granting of summary judgment, the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but by its own affidavits, depositions, answers to interrogatories, or admissions the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[6] When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[7]

Under the Louisiana Worker's Compensation Act, worker's compensation benefits are an employee's exclusive remedy against the employer for injury, compensable sickness or disease.[8] An employee may not sue his em-

---

4. Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cormier v. Pennzoil*, 969 F.2d 1559 (5th Cir.1992), *Fontenot v. UpJohn Co.*, 780 F.2d 1190 (5th Cir.1986).

5. *Cormier*, 969 F.2d at 1560.

6. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir.1991); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990).

7. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *Cormier*, 969 F.2d at 1560.

8. La.R.S. 23:1032 (Supp.1992).

La.R.S. 23:1032 reads in pertinent part:
A. (1)(a) The rights and remedies herein granted to an employee ... on account of an injury for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee ... against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury....
(2) For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof....
C. The immunity from civil liability provided by this Section shall not extend to:
(1) Any officer, director, stockholder, partner, or employee of such employer or principal who is not engaged at the time of the injury in

ployer or any "principal" in tort.[9] "Principal" is defined as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."[10] A person rendering service for another in any trade, business, or occupation covered by the worker's compensation laws is presumed to be an employee for purposes thereof.[11] However, this presumption may be rebutted by showing that the employee is an independent contractor.[12] Even if a worker is found to be an independent contractor, he may still be subject to the worker's compensation laws if he is also determined to be a statutory employee under Louisiana Revised Statutes 23:1032 or 23:1061.[13]

In 1989, the Louisiana Legislature amended Louisiana Revised Statutes 23:1061 to read:

A. When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; .... The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work....[14]

Louisiana Revised Statutes 23:1061 requires an employer to pay compensation to an employee under the following circumstances: (1) the execution of any work which is a part of the principal's trade, business, or occupation (one-contract situation), or (2) the execution of any work which the principal had contracted to perform, and contracts with another person for the execution thereof (two-contract situation).[15] Since Exxon contracted with plaintiff's payroll employer to perform turnaround work at defendant's chemical plant, defendant relies on the "one-contract" theory in asserting it is plaintiff's statutory employer.[16]

the normal course and scope of his employment; ...

9. *Id.*

10. La.R.S. 23:1032(A)(2) (Supp.1992).

11. La.R.S. 23:1044 (1985).

12. *Duhon v. Conoco, Inc.*, 795 F.Supp. 189 (W.D.La.1992); *Legros v. Norcen Exploration, Inc.*, 583 So.2d 859 (La.App. 1st Cir.), *writ denied*, 588 So.2d 101 and 588 So.2d 109 (La. 1991); *Dye v. Iptk Door Co., Inc.*, 570 So.2d 477 (La.App. 5th Cir.1990). For the definition of "independent contractor," see La.R.S. 23:1021(6), *Legros*, 583 So.2d at 861, and *Dye*, 570 So.2d at 480.

13. *Duhon*, 795 F.Supp. at 191–92; *Legros*, 583 So.2d at 861; *Dye*, 570 So.2d at 480.

14. The second sentence of La.R.S. 23:1061(A) was added by Acts 1989, No. 454, § 3.

15. *Maddox v. Baker Oil Tools, Inc.*, 774 F.Supp. 419, 421–22 (E.D.La.1991); *Legros*, 583 So.2d at 862.

16. The relationship between defendant and plaintiff's payroll employer does not satisfy the two-contract situation. In the two contract theory, the contractor (or "principal") undertakes to do a job for another, and then subcontracts with a subcontractor to perform all or part of the work. In the two-contract situation, the requirements for a contractor (or "principal") to be liable for compensation and thus immune from tort suit is: 1) defendant/contractor entered into a contract with a third party; 2) pursuant to that contract, work was performed; 3) in order for defendant/contractor to fulfill its contractual obligation to perform the work, he entered into a subcontract for all or part of the work performed. It is not necessary in the two-contract situation to establish whether the job undertaken by the subcontractor was part of the contractor/principal's usual trade, business, or occupation. *Legros*, 583 So.2d at 863.

■ Exxon contracted with J.E. Merit for the mechanical portion of the turnaround unit.[17] Exxon, therefore, entered into a principal-contractor relationship with plaintiff's employer which satisfies the contract element of 23:1061. However, the defendant must also show that the work which is the subject of the contract is part of its trade, business, or occupation.

Prior to the 1989 amendment to 23:1061(A), Louisiana followed the three prong test set forth in *Berry v. Holston Well Service, Inc.*[18] to resolve the question of whether work was part of a principal's trade, business, or occupation:

(1) Is the contract work specialized or non-specialized?

If the work is specialized, then the principal cannot be a statutory employer as a matter of law.

(2) If non-specialized, is the contract work comparable to the principal's trade, business, or occupation using the following inquiries?

(a) Is the work routine or customary?

(b) Does the principal have the equipment and personnel capacity to perform the work?

(c) What is the practice in the industry?

(3) Was the principal engaged in contract work at the time of the injury?[19]

The *Berry* decision established a very restrictive set of circumstances under which a principal could become a statutory employer. The 1989 amendment to 23:1061(A) broadened the reach of the statutory employer

designation.[20] The amendment tracks the language in the first two prongs of the *Berry* test and then explicitly rejects the determinative nature of those queries.[21]

The 1989 amendment does not provide additional factors to guide courts in determining statutory employment relationships. The amendment, on the contrary, precludes the courts from considering only certain factors in determining whether an activity falls within a principal's trade, business, or occupation.[22]

The amendment to 23:1061 became effective on January 1, 1990. Since the alleged injuries in this case occurred on April 20, 1992, the amended 23:1061 applies in defining the defendant's legal relationship with plaintiff.

Defendant contends that "turnaround" work is a part of its trade, business, or occupation. Prior to the 1989 amendment to 23:1061(A), this Court had previously found that turnaround work performed on a reactor at Exxon Corporation's chemical plant in Baton Rouge was within the trade, business, or occupation of Exxon Corporation.[23] The United States Fifth Circuit Court of Appeals affirmed this Court's decision.[24] Other courts have also frequently found that turnaround work is part of a refinery and chemical plant operator's trade, business, or occupation.[25]

In *Harris v. Murphy Oil, U.S.A., Inc.,*[26] the United States Fifth Circuit recently affirmed that turnaround work is part of an oil refinery operator's trade, business, or occupation. In *Harris,* an employee of a subcon-

**17.** Defendant's exhibit B.

**18.** 488 So.2d 934 (La.1986), superseded by statute, La.R.S. 1061(A) (1989).

**19.** *Berry,* 488 So.2d at 938; *Savant v. James River Paper Co., Inc.,* 780 F.Supp. 393, 396 (M.D.La.1992).

**20.** *Harris v. Murphy Oil, U.S.A., Inc.,* 980 F.2d 991, 993 (5th Cir.1992).

**21.** *Duhon v. Conoco, Inc.,* 795 F.Supp. 189 (W.D.La.1992); *Savant v. James River Paper Co., Inc.,* 780 F.Supp. 393 (M.D.La.1992); *Maddox v. Baker Oil Tools, Inc.,* 774 F.Supp. 419 (E.D.La.

1991); *Legros v. Norcen Exploration, Inc.,* 583 So.2d 859 (La.App. 1st Cir.1991).

**22.** *Savant,* 780 F.Supp. at 397.

**23.** *Hodges v. Exxon Corp.,* 563 F.Supp. 667 (M.D.La.1983).

**24.** *Hodges v. Exxon Corp.,* 727 F.2d 450 (5th Cir.1984).

**25.** *Seeney v. Citgo Petroleum Corp.,* 848 F.2d 664 (5th Cir.1988); *Duhon v. Conoco, Inc.,* 795 F.Supp. 189 (W.D.La.1992); *Boudreaux v. Freeport Chemical Co.,* 576 So.2d 615 (La.App. 4th Cir.1991).

**26.** 980 F.2d 991 (5th Cir.1992).

tractor was injured while performing turnaround maintenance work on reactors at an oil refinery. The subcontractor's employee sued the operator of the oil refinery in tort. The operator moved for summary judgment contending it was plaintiff's statutory employer and thus immune from tort liability. The district court granted the summary judgment holding that plaintiff's work was part of the oil refinery operator's trade, business, or occupation. The Fifth Circuit affirmed the district court's granting of summary judgment.[27]

In addition to the *Harris* decision, the Fifth Circuit has rendered two recent decisions which support the Court's conclusion herein. In *Salsbury v. Hood Industries, Inc.,*[28] the Fifth Circuit found that a party that was in the business of milling and selling lumber was the statutory employer of an employee of a contractor who was hired to supply a crane and a crane operator. Similarly, in *Becker v. Chevron Chemical Co.,*[29] the Fifth Circuit concluded that a chemical company was the statutory employer of an employee of a contractor who was hired to replace overhead walkways used to access hatches located above the company's storage tanks.

In light of this jurisprudence and the expanded scope of Louisiana Revised Statutes 23:1061, this Court finds that the evidence supports defendant's contention that the turnaround work performed on the OXO Unit under the contract was within defendant's trade, business, or occupation. A "turnaround" is a process whereby an operating unit of a plant, such as on OXO Unit, is shut down and the machinery, piping systems, vessels, and the like are cleaned, refurbished, overhauled, replaced, and/or updated.[30] A turnaround is essential to the continued safe and efficient operation of a unit in particular, and the plant as a whole.[31] A turnaround is a normal, necessary, and recurring part of the operation of a chemical plant.[32] The evidence also suggests that defendant employed pipefitters who could perform the turnaround work.[33]

Other evidence which can be considered in determining statutory employer status is the agreement between the contractor and principal regarding the payment of worker's compensation insurance.[34] Article 14 of the contract between defendant and J.E. Merit states that *"Statutory Coverage for Workers' Compensation and Employer's Liability Insurance* up to $500,000 for all of Contractor's employees engaged in the performance of this contract shall be provided by Owner."[35] Exxon's obligation to provide worker's compensation insurance for J.E. Merit's employees is further evidence that it is plaintiff's statutory employer.

■ Finally, plaintiff contends that article 2 of the contract which explicitly delineates J.E. Merit as an independent contractor precludes the Court from holding that Exxon is plaintiff's statutory employer. This contention is without merit. Article 2 of the contract provides in part: "For the purpose of Contract and all services to be provided hereunder, Contractor shall be, and shall be deemed to be, an Independent Contractor and not the agent or employee of owner...."[36] Regardless of the language of the

27. *Id.*

28. 982 F.2d 912 (5th Cir.1993). The Fifth Circuit set forth a detailed analysis of the 1990 amendment to La.R.S. 23:1061. This analysis will not be repeated herein.

29. 983 F.2d 44 (5th Cir.1993).

30. Defendant's exhibits A, p. 2, and B, p. 2.

31. Defendant's exhibits A, p. 2 and B, p. 2.

32. Defendant's exhibit A, p. 2, defendant's exhibit C, p. 2.; plaintiff's exhibit A, p. 8, plaintiff's exhibit B, p. 31.

Turnarounds on the OXO unit occur approximately once a year, and J.E. Merit performed a turnaround on the OXO Unit approximately one year prior to the April 1991 turnaround which is the subject of this suit. Plaintiff's exhibit A, p. 5; plaintiff's exhibit B, p. 26.

33. Plaintiff's exhibit A, p. 22.

34. *Demery v. Dupree,* 511 So.2d 1268 (La.App. 2d Cir.) *writ denied,* 514 So.2d 456 (La.1987); *Godfrey v. John L. Vaccaro & Assoc.,* 402 So.2d 195 (La.App. 1st Cir.1981).

35. Defendant's exhibit B.

36. Defendant's exhibit B.

contract, the defendant cannot relieve itself of its statutory obligation to provide worker's compensation coverage.[37] The compensation remedy is exclusive and cannot be waived by any contract, rule, regulation or device.[38] An independent contractor who performs work which is part of the principal's trade, business, or occupation is covered by the Worker's Compensation Act.[39]

The evidence establishes that Exxon is the statutory employer of plaintiff under Louisiana Revised Statutes 23:1061 and thus is immune from plaintiff's tort suit under Louisiana Revised Statutes 23:1032. There exists no genuine issue of material fact and defendant is entitled to summary judgment as a matter of law.

Therefore:

IT IS ORDERED that defendant's motion for summary judgment be and it is hereby GRANTED. Judgment shall be entered dismissing plaintiff's suit with prejudice.

---

**37.** *Maddox v. Baker Oil Tools, Inc.*, 774 F.Supp. 419 (E.D.La.1991); *Locker v. Wilson*, 536 So.2d 441 (La.App. 2d Cir.1988).

In addition, these cases refuse to allow an employee to claim equitable estoppel. An employer is not estopped from asserting the defense of the exclusive remedy of worker's compensation by having led the plaintiff to believe he was an independent contractor. *Maddox*, 774 F.Supp. at 423; *Locker*, 536 So.2d at 443.

**38.** *Maddox v. Baker Oil Tools, Inc.*, 774 F.Supp. 419 (E.D.La.1991); *Locker v. Wilson*, 536 So.2d 441 (La.App. 2d Cir.1988).

**39.** *Duhon v. Conoco, Inc.*, 795 F.Supp. 189, 191–92 (W.D.La.1992); *Legros v. Norcen Exploration, Inc.*, 583 So.2d 859, 861 (La.App. 1st Cir.1991); *Dye v. Ipik Door Company*, 570 So.2d 477, 480 (La.App. 5th Cir.1990).