**George Rogers CLARK, Jr., et al.**

v.

**EXXON CORPORATION.**

**Civ. A. No. 94–124–B–1.**

United States District Court,
M.D. Louisiana.

Nov. 9, 1994.

Thomas R. Pittenger, Baton Rouge, LA, for plaintiff.

Robert H. Wood, Jr., New Orleans, LA, for Exxon Corp.

Musa Rahman, Baton Rouge, LA, for Louisiana Workers' Compensation Corporation, intervenor-plaintiff.

## *RULING ON MOTION FOR SUMMARY JUDGMENT*

RIEDLINGER, United States Magistrate Judge.

This matter is before the court on a motion for summary judgment filed by the defendant, Exxon Corporation.[1] The motion is opposed by the plaintiffs George Rogers Clark, Jr. and Sylvia Clark.[2]

Plaintiff filed this action to recover compensatory damages [3] resulting from personal injuries suffered by George Rogers Clark, Jr. Defendant removed the case and then moved for summary judgment based on Louisiana's statutory employer defense, LSA–R.S. 23:1032; 23:1061.A. Defendant argued that it is immune from tort liability under the state's worker's compensation law because of its status as the plaintiff's statutory employer. Defendant contended that the contract work being performed by Clark at the Exxon chemical plant, for his employer C.M. Penn and Sons, Inc., was part of Exxon's "trade, occupation, or business." Since under section 23:1061.A. it was liable for any worker's compensation benefits, it is entitled to the immunity from suit provided by section 23:1032. In support of its motion Exxon relied upon a statement of undisputed facts, the contract between it and C.M. Penn,[4] affidavits of J. Steven Bailey [5] and Raju P. Hajare,[6] and excerpts from the depositions of the plaintiff and William G. Hamby.[7] Exxon accepted as true for purposes of the motion the plaintiff's description of the accident. Record document number 19, p. 2.

Plaintiff agreed that the "integral relation" test must be applied and conceded that removal and treatment of OXO/Plasticizer Unit waste water bears an integral relationship to the trade, business or occupation of Exxon.

---

1. All parties have consented to proceed before the magistrate judge. Record document numbers 7, 8 and 23.

2. As a matter of convenience, this ruling will refer to the plaintiffs in the singular. The intervenor also opposes Exxon's motion and adopted the plaintiffs' memorandum in opposition. Record document number 27.

3. Plaintiff has moved to amend the complaint to assert a claim for punitive damages under Louisiana Civil Code Article 2315.3, arguing that the recent Louisiana Supreme Court decision in *Billiot v. B.P. Oil Company,* —— So.2d —— (La.S.Ct. No. 93–C–1118, September 29, 1994), 1994 WL 529063 (La.), permits a claim for such damages even though compensatory damages may not be recoverable because of the exclusionary rule of the Worker's Compensation Act. This ruling will not address the motion to amend.

4. Defendant's Exhibit 1A.

5. Defendant's Exhibit 1. Bailey is employed by Exxon as contracts and planning supervisor for the Exxon chemical plant. He had supervisory responsibility over the contract between Exxon and C.M. Penn and attested to the authenticity of the copy of the contract attached to his affidavit as Exhibit 1A.

6. Defendant's Exhibit 2. Hajare was an engineer employed at the Exxon chemical plant on the date of the accident, February 9, 1993. At the time he had supervisory duties in the OXO/Plasticizer Unit and investigated the accident.

7. Hamby was employed by C.M. Penn and was designated as its representative at the Rule 30(b)(6) deposition. Hamby gave deposition testimony concerning the contract between C.M. Penn and Exxon and events surrounding the accident. Defendant's Exhibit 4, pp. 8–21.

Record document number 26, p. 5. However, the plaintiff argued that the integral relationship analysis requires consideration of all the facts of each individual case, and that there are certain facts not brought out by Exxon that lead to the conclusion that a majority of the work being performed by C.M. Penn at the time of the accident did not fall within Exxon's trade, business or occupation.

The relevant facts are undisputed. On the date of the accident there existed a contract between the plaintiff's employer and Exxon. Plaintiff's Exhibit 1; defendant's Exhibit 1A. The contract was dated July 15, 1990 and replaced an existing contract dated September 27, 1984. The contract was a continuous one and in effect until cancelled by either party on 30 days prior written notice. Article 1 provided that the work to be performed was "collection and transportation of hazardous and non-hazardous waste in Owner's facilities in the Baton Rouge, Louisiana area." The next article of the contract set out the "independent contractor" relationship between Exxon and C.M. Penn,[8] and Article 14 required C.M. Penn to maintain worker's compensation insurance for all of its employees.

The work of Exxon's chemical plant is to manufacture various petrochemical products, one of which is plasticizers. Part of the manufacturing process of plasticizers occurs at the OXO/Plasticizer Unit where the plaintiff was dispatched to collect and transport waste water. The contract work performed by C.M. Penn in February was necessitated by the scheduled maintenance of the aerosol unit which is part of the OXO/Plasticizer Unit. The waste water from the unit was normally carried to the treatment facility by a two-inch pipeline. However, part of the scheduled maintenance of the aerosol unit was to work on the pipeline and it had to be out of operation. The OXO/Plasticizer Unit operates continuously. In order for the unit to operate, waste water must be continuously removed for treatment and replaced with fresh water. Once the maintenance of the aerosol unit and pipeline was completed the pipeline was put back in service and the tank trucks were no longer needed to transport waste water.[9]

On February 9, 1993, pursuant to the contract, C.M. Penn supplied a tractor, tank truck and Clark to collect and transport non-toxic, non-hazardous waste water from Exxon's OXO/Plasticizer Unit to the Advanced Water Treatment Plant inside the facility. When the plaintiff arrived with the tank truck one of Exxon's employees asked the plaintiff to climb on top of the truck to insert the hose, and later another Exxon employee asked the plaintiff to climb back on top to check the loading of the waste water into the tank. When the plaintiff lifted the dome underneath which the hose was resting, the hose came out and sprayed the water on the plaintiff. Plaintiff lost his balance, slipped off the tank and fell to the ground.

In this motion for summary judgment[10] the relevant facts are undisputed, but the parties dispute the legal conclusion to be drawn from those facts. The legal determi-

---

8. Plaintiff conceded in his opposition memorandum that Exxon may not waive its statutory employer defense by agreeing with an employer that the employer is an independent contractor. See, Plaintiffs' memorandum, record document number 26, p. 6.

9. In opposition to Exxon's summary judgment, the plaintiff relied upon excerpts of his own deposition, a copy of the contract (with attachments), Hajare's affidavit and excerpts of the deposition of Hamby. Plaintiff did not submit a statement of material facts as to which there exists a genuine issue for trial pursuant to ULLR 2.10M.

10. Summary judgment is only appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279–80, n. 6 (5th Cir.1991). In response the nonmoving party must identify specific evidence in the record which demonstrates that there is a material fact issue concerning an essential element of its case for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law identifies which facts are material and in this diversity case the court must apply Louisiana's worker's compensation law on statutory employer.

nation must be guided by Louisiana's law on statutory employer status. The "integral relation" test must be applied to determine whether the principal has engaged a contractor to perform work that is part of the principal's trade, business or occupation. *Morgan v. Gaylord Container Corp.,* 30 F.3d 586 (5th Cir.1994); *Thompson v. Georgia Pacific Corp.,* 993 F.2d 1166, 1168 (5th Cir. 1993).[11] Thus, to determine whether C.M. Penn's work is a part of Exxon's trade, business or occupation, the court asks whether the contract work being performed is "integral or essential" to Exxon's trade, business or occupation. *Id.*

Plaintiff conceded that the removal and treatment of the OXO/Plasticizer Unit waste water bears an integral relationship to the trade, business or occupation of Exxon. Since it is undisputed that the task the plaintiff was performing at the time was necessary for the removal and treatment of that water, the only reasonable conclusion is that the contract work was integral or essential to Exxon's trade, business or occupation.

The relevant facts viewed in the larger context of the contract itself do not result in a different conclusion. The contract stated that the work to be performed was the collection and transportation of hazardous and non-hazardous waste in Exxon's facility. That is exactly what the plaintiff was doing at the time of the accident. The fact that Exxon had a continuous contract for the performance of this type of work is further evidence that the work the plaintiff was engaging in at the time of his injury was essential to Exxon's business—the manufacture of plasticizers and other petrochemical products.

Plaintiff contended that the majority of the work being performed by C.M. Penn at the time of the accident did not fall within Exxon's trade, business and occupation. Plaintiff attempted to rely on the affidavit of Hajare to support an assertion that C.M. Penn's

trucks were only needed every 12 to 16 months. Hajare's affidavit cannot fairly be interpreted as affirmative evidence of how often C.M. Penn's trucks were used for the collection and transportation of waste. His statement was clearly made in reference to the need to use the tank trucks for scheduled maintenance of the aerosol unit. Other than relying on the statements of Hajare, the plaintiff did not come forward with any evidence to support his contention that the majority of the work being performed by C.M. Penn at the time of the accident was not an integral part of Exxon's trade, business or occupation.

Plaintiff also argued that there are undisputed facts which warrant a finding that Exxon is not a statutory employer: Exxon's employees were responsible for the loading and unloading of the water into the tank; plaintiff was on top of the tank truck assisting with the loading against Exxon's company policy; and C.M. Penn and its employees were "simply in the business of providing trucks and tank-trailers for the transportation of waste materials." First, the plaintiff's characterization of the work to be performed under the contract is not consistent with the plain wording of the document. Again, the contract states that the work is to provide collection and transportation of waste in Exxon's facilities. Second, accepting as true the plaintiff's statements that Exxon employees were responsible and should have been the ones to go on top of the truck does not change the result. Whether or not the plaintiff was supposed to be where he was at the time of the accident is immaterial. It does not change the fact that the plaintiff was doing exactly what an Exxon employee would have been doing, or the fact that the contract work being done—collection and transportation of waste water so that the OXO/Plasticizer Unit could produce plasticizers—was essential to Exxon's business of petrochemical production.[12]

11. In 1989 the Louisiana Legislature amended section 23:1061 to overrule *Berry v. Holston Well Serv., Inc.,* 488 So.2d 934 (La.1986), and this marked the return to the integral relation test. *Thompson,* 993 F.2d at 1168.

12. Plaintiff also argued that the fact that the contract provided for C.M. Penn to be responsible for worker's compensation insurance should be one of the factors taken into consideration. *See, Salmon v. Exxon Corp.,* 824 F.Supp. 81, 86 (M.D.La.1993); Defendant's Exhibit 1A, Art. 14. *Salmon* and the Louisiana decisions cited in foot-

Under Louisiana law, LSA–R.S. 23:1061.-A., Exxon was the statutory employer of Clark and is entitled to tort immunity under LSA–R.S. 23:1032. Because there exists no genuine issue of material fact Exxon is entitled to summary judgment as a matter of law.

Accordingly, the motion for summary judgment by the defendant, Exxon Corporation, is granted.

note 34 of that opinion offer no guidance as to how the factor should be considered in this case because they all involved situations where the principal had agreed to provide worker's compensation insurance. Consideration of this undisputed fact would not change the result here. It does not change the scope of the contract work or the tasks being performed by the plaintiff at the time of the accident pursuant to that contract. Viewing all these facts the most reasonable conclusion remains that the defendant engaged C.M. Penn to perform work that was an integral part of its business.